Mr. Justice Story
delivered the opinion qf the fcourt. This is a writ of error to the highest court o. law of the state of New-York; and the questions which are re-examinable upon the record in this *303 court .are such only as. come within the p.urview of the 25th1 section of. the judiciary act of 1789, ch. 20.
Under thassih section of uta judiciary act ofl789.ch.S0 the writ ofer directed to any which the re mm<mta^Jrnf may **
But.a preliminary question, has been,made, which must be' discussed before proceeding to consider the merits of the cause.
It is contended that the record is not, and cannot be brought, before this court.
. By the judicial System of the state óf New-York, the decisions of their supreme court are revised and corrected in a court of errors, after which the record . 7 is returned to the supreme cauri, where the ludgment . , , , ’ v , . as corrected is entered, and where the record remains, In this case the writ of error was received by court of errors, after the record had been transmitted to the supreme, court, whose judgment was affirmed.
It Is contended that, the record being ho longer the court of the last resort in the state, can, by ho cess, he removed into this court.
The judiciary act, allows the party who thinks, him" self aggrieved by the decision of any inferior court, five years, within which he may sue out his writ ‘of er. ror, and bring his cause into this court. The satne rule applies to judgments and decrees of a state court, in cases within the jurisdiction of this court. As the constitutional jurisdiction of the courts of the union cannot be affected by any regulation which a state may make of its own judicial system, the only inquiry will be, whether the judiciary act has been so framed as to embrace this case.
The words of the act are, “ that a final judgment tor decree in any suit in the highest court of law or *304 equity of a state in which a decision could be had, where is drawn in question,” &c. “may be re-examinod and reversed or affirmed in the supreme court of the United States upon a writ of error, the citation being signed,” &c. The act does not prescribe the tribunal to which the writ of error shall be directed. It must be directed either to that tribunal. which cars execute'll; to that in which the record and judgment to he examined are deposited, or to that whose judgment is to be examined, although from its structure it may have been rendered incapable of performing the act required-by the writ. Since the low requires a thing to he done, and gives the writ of error, as the means by which it is to be done, without prescribing in this particular the manner in which the writ is to be used, it appears to the court to be perfectly clear that the writ must be so used as to effect the object. It may then* be. directed to either court in which the record and judgment on which it .is to act may be found.’ The judgment- to he examined- must be that of the highest court of the state having cognizance of the case,- but the record- of that, judgment may he brought from any court in which it may be legally deposited, and in which it may he found by the writ
In this case, the writ was directed to the court of errors, which) having parted with the record,- could not execute it. It was then presented to the supreme court; but, being directed to' the court of errors, could not regularly be executed by that court. In this 'State of thiags the parties consented to waive all ob_ *305 jections to the direction of the writ, and to consider the record as properly brought up, it, in the opinion of this court, it could be now properly brought up on a writ of error directed to the supreme court of Ne>v-York, The court being of opinion that this may be done, the case' stands as if the" writ of error had been properly directed.
The original suit was brought by the defendant in error against the plaintiffs in error for an. alleged trespass for taking and carrying -away, and con verting.to their own use, the ship American Eagle, and her appurtenances, and certain ballast and articles of pro-, visions, &c. the property of the defendant in error. This is the substance of the declaration, although there are some differences in alleging the tort in the different counts. The original defendants pleaded, in the first place, the general issue, not guilty, to the whole declaration ; and then two special pleas. The first special plea,'in substance, alleges^ that the said' ship was attempted to be fitted out and armed, and that the ballast and provisions were procured for the equipment of the said ship, and were put on boárd of the said ship as,a part of her said equipment, with intent that .the said ship should.be employed .in the service of a foreign state, to wit, of that part of the island of St, Domingo which was then under the government of Petion, to commit hostilities upon the subjects of. another foreign statej with which the United States ■were then-at peace, to wit, of that part, of the island of St. Domingo which was then under the government ofChristophe, contrary to the. form of the statute .in *306 ,auch case roadeand provided; and that the original defendants, by virtue of the power and authority, awd in pursuance of the instruction sand directions of the president of the United1 States, seized the said ship* &c. as forfeited to the use of the United States, According to the statute aforesaid, &c. The second special plea is like the first, except that it does not state,,that the ship Was seized as forfeited, but alleges that the ship ;was- taken possession of, and detained., under the instructions of the president of the United States, in order to the execution;of the prohibition aftd penalties of the act in such case made and provided, and except'. that ,it omits the allegations lintifer the videlicets in the first plea, specifying the? foreign state b'y or Against whom the said ship was ,to.,be employed. To these pleas tfieFe is a general deihurret, and joinder in demurrer, updn .which thfe state court gayé judgment ih favour, of the original. plaintiff. Upon the trial of the general issue, a'bill o£ exceptions was taken to the opinion-of the court. By that bill' of exceptions, among other things, it appears, that the original’plaintiff, at' the trial, gave, in evidence, that at the time of the seizure the ship was in his actual full and peaceable possession ; that the ship, upon tjie seizure, had been duly" libelled for the alleged offence in the district eonrt of New-York• thát the original plaintiff appeared and duly claimed! the said, ship; and upon the trial she was duty acquitted, and ordered to be restored? to the original plaintiff by the district court'; and that a certificate-Of reasonable cause for the seizure of the sáid ship had -beair deiutd. The plaintiff -then gavéin evl *307 dence, that the Value of the ship at the timé of her seizure was 100,000' dollars; and that the said Schenck seized and took possession of the said ship by the written directions of the said Gelston; but no other proof was offered by the plaintiff, at that time, of any right Or title in the said plaintiff to the said ship ; and here the original plaintiff rested his cause. The original defendants then insisted before the court, that the laid several matters, so produced and given in evidencé on the part of the original plaintiff, were hot sufficient to entitle him to a verdict, and prayed the court so to pronounce, and to nonsuit the' plaintiff. But the court refused the application, and declared^ thaf the said several matters so produced and given in evidence were sufficient to entitle the plaintiff to a verdict, and that he ought not to be nonsuited. To which opinion the, original defendants then excepted; and the original plaintiff then gave in evidence that he purchased the said ship of James Gillespie, who bad purchase her of John R. Livingston and Isaac Glason, the owners thereof, and Uiat in pursuance of such purchase, the said Gillespie had delivered full ahd cóm-† píete possession of the said ship, &c. to the original' plaintiff, before the taking thereof by the original defendants.
The original defendants (having given previoas notice of the special matter of defence to be given in evidence on the trial under the general issue, accordlng to the laws of New-York,) offered to prove and give in evidence, by the way of defence and in mitigation of damages, the same matter. of forfeiture alleged in their first special plea, with the additional ...fact that *308 the «aid Gelston was collector, and the said. SchencR was surveyor of the customs of the district of’ rsewYork, and as such, and not otherwise, made the seizure' of the ship, &c.. And' the original defendants did, thereupon, insist that the said . several matters, so ofiered to be proved and given in evidence,- ought to be admitted in justification of the trespass charged against the defendants, or in mitigation' of the damages, claimed by the plaintiff, and prayed the court So to admit it. But the counsel for the plaintiff, admitting that the ¡defendants' had not been influenced by any malicious motive in making the said seizure, and that they had not acted with any view or design of oppressing or injuring the plaintiff, the court overruled the whole of the said ¡evidence so offered to he proved by the original defendants, and did declare it to be inadmissible in justification of the trespass charged against the defendants;' fend after'the admission so madé by the original plaintiff’s counsel, that the said evidence ought not to be received in mitigation or diminution of the said drimages, as the said admission precluded the plaintiff from claiming any damages by way of punishment or smart money; and that after such admission the plaintiff could only recover the damages actually sustained, and with that direction left the cause to the jury.
From this summary of the pleadings, and of the facts in controversy at the trial, it is apparent that, this court has appellate jurisdiction ofthis cause, only so far as is drawn in question the validity ot an ■ authority exercised under, the United Stales, . and the decision is against the validity thereof arid so far.as *309 is drawn in question the construction of some clause in a statute of the United States, and the decision- is against the title, right, privilege, or exemption specially set up or claimed by the original defendants, for to such questions, (so far as respects this case,) the 25th section of the judiciary act has expressly restricted our examination. - Whether such a restriction. be not inconsistent with sound public policy, and does not materially impair the rights of other, parties as'well as of the United States, is an inquiry deserving- of the most serious attention of the legislature.. We'have' nbthing to do but to expound the law as we find it; the defects of the system must be remedied by.another department of the government.
The cause will be first considered in reference to the bill of exceptions. In respect to the proof of the original plaintiff’s cause.of action, and the opinion of the court that such proof was sufficient to entitle hhn to a verdict, no err^r has been shown upon the argument; and certainly none is perceived by this qourt. If,, however, there were any error In that opinion, we could not re-examine it, for it is not within the purview of the statute. It does not draw..in question, any authority exercised under the United-States, nor the construction of any statute of the United States.
In respect to the rejection of the evidence offered by . the. original defendants to prove the forfeiture, and their right of seizure, there can be n6 doubt that this court has appellate jurisdiction,-if by law that evidence ought to have'béén , admitted in justification of "the trespass charged on the .-‘Original defendants;.for it *310 iftf httbS the construction of a statute of, and an autjihnty derived from, and exercised under, the United States.
At common lw any son may,at. his peril, seize for the01 'govern-went.
In order to establish the admissibility of the evidence offered by he defendants, it is necessary for them to sustain the affirmative of the following propositions. 1. That a forfeiture had been actually incurred under the statute of 1794, ch„ 50. — 2» That it wás competent for a state court of common law to entertain and decide the question of forfeitures. 3. That the sentence of acquittal in the district court was not conclusive upon the question of forfeiture; and, 4. That the defendants as officers of the customs, had a right to make the seizure.
Upon'the last' point, there does not seem to be rocm for doubt. At common law, any person . _ J may at his peril, seize fora forfeiture to the government; and if the government adopt his seizure, and the property is condemned, he will be completely justified;. and it is not necessary to sustain the Seizure, or justify the condemnation, that the party seizing shall be entitled to any - part of the forfeiture. (Hale on the Customs. Harg. Tracts, 227. Roe v. Roe, Hardr. R. 185. Malden v. Bartlet, Park. R. 105.; though Horne v. Boozey, 2 Str. 952, seems contra.) And if the party be entitled to any part of the forfeiture, (as the informer under the statute of 1794', ch. 50. is by the express provision of the Law,) thére can be no doubt, that he is entitled in that character to seize. (Roberts v. Witherhead, 12 Mod. 92.) In the absénce of all positive > authority, it might be proper to resort to these principles, in aid of *311 the manifest purposes of the law. But there are express statuteable ■ provisions, which directly apply to the present case. The act of the 2d of March, 1799, ch. 128. s. 70. makes it the duty of the several officers of the customs, to make seizure of all ve.sseis and goods liable to seizure by virtue of any act J J . of the United. States, respecting the revenue, and . , , , r , assuming the statute of 1794, ch. 50. not to be a revenue law within the meaning of this clause, still the'pase falls within the broader language of the' act- of the 18th of February 1793, ch. 8. s. 27. which authorizes thp officers of the revenue to make seizure of any ship or goods, where any breach of the laws of the United States has been committed. Upon the general principle then, which has béen, abové stated, and upon -the express enactment of the statute, the defendants, supposing thereto have been an actual, forfeiture, might justify'themselves in the seizure. There Is this strong additional reason in support of the sition, that the forféiture' must be. deemed to attach at the moment-of the-commission'of the offence, and consequently, fronji that moment, the title of the plaintiff would he completely devested, so that he could maintain.no action for the subsequent seizure. This the doctfine of the English courts, and it has been recognised and enforced in this court, upon very solemn argument.. (U. S. v. 1960 Bags of Coffee, 8 Cranch, 398. The Mars, 8 Cranch, 417. Roberts v. Witherhead, 12 Mod. 92. Salk. 223. Wilkins v. Despard, 5 T. R. 112.)
B}r s[atute °®cers'°^ revenue- may seize where the laws of the United States }^|bee" Ti<^
attaches^'i»^ m<* fence is com propeny^irt dev“t'
States’ Courts j^^Hf " of quest’0118 derthelawsof the . United States, Their. condemnation*" “
In the next place, can a state ' court of common law, entertain and decide the question of forfeiture *312 inf this case. This is a question of vast practical importance ; but in our judgment, of no intrinsic legal difficulty. By the constitution, the judicial power of the Unite.d States extends to all cases of law and equity arising under the constitution, laws, and treaties of the United States, and to all cases of admiralty and maritime jurisdiction; and by the judiciary act' of 1789, ch. 2(X s. 9. the district courts are invested with easeful• give original cognizance of all civil causes of admiralty and maritime jurisdiction, and of all seizures on land and water, and of all suits for penalties and forfeitures incurred under the laws of the United States. This is a seizure for a forfeiture under the laws of the United States, and, consequently, the right' to decide Upon the same, by the very term's of the- statutes, exclusively belongs to the proper court .of the United States; and it depends upon its.final decree,.proceeding m rem, whether the seizure is to' be adjudged rightful or tortious. If.a sentence of condemnation bq pronounced, it is conclusive, that a forfeiture is incurred ; if a sentence of. acquittal, it is equally conclusive against. the forfeiture ; and in either case, the question cannot be litigated in another forum. This was the doctrine asserted by this court, in the case of Slocum v. Mayberry, (2 Wheat. R. 1.) after very, deliberate Consideration, and to that doctrine we unanimously adhére.
The reasonableness 'of this doctrine results from the very nature of proceedings in rem. All persons haying an interest in the subject mfitter,.whether as seizing officers,, or informers, or claimants, are parties or may be parties to such suits, so far as their interest *313 extends. The decree of the court acts upon the thing •iii controversy, and settles the title of the property it" •elf, the right of seizure, and the question <of forfeiture. If its decree were not binding upon all the world upon the points which it professes to dqcide, the consequences would be most mischievous to the public. In case oí condemnation no good title to the property could be conveyed, and no justification of the seizure could be, asserted under its protection- In case of acquittal, a new seizure might be made by any other persons toties quoties for the same offence, and the claimant be loaded with ruinous costs and expenses. This reasoning applies to the decree of a court having competent jurisdiction of the cause, although it mav not be exclusive. But it applies with greater -force to tt court ot exclusive jurisdiction;, since an attempt to re-examing its decree, or deny its conclusiveness, is .a manliest violation of its exclusive authority. It is doing that indirectly,.which the law itself prohibits to be done directly. It is, in effect, impeaching collaterally, a sentence which the law ñas pronounced to be valid until vacated or reversed on appeal by a superior tribunal.
An action fir the seizure cannot bo stategcourt of beforeTi^de“si.on th# United States*1 rm?e S **
The argument against this doctrine, which has been . , urged at tñe bar, is, that an action of trespass will in cáse of a seizure, lie in a state court of common law, and therefore the defendant must have a right to protect himself by pleading the fact of forfeiture in his J , . defence. But at what.time and under what stances will an action -of trespass lie? If the action be commenced while the proceedings in rem for the supposed forfeiture are pending in the proper court of. the *314 United States, it is commenced too soon; for until a final decree, it cannot be ascértained whether it be a trespass or not, since the decree can alone decide whether he taking be rightful dr tortious. The pendency of the suit in rem would be a good plea in abatement, or a temporary bar of the action, for it would establish that-good cause of action then existed, If the action be commenced after a decree of condemnation, or after-:an acquittal, and there be a certificate of reasonable cause . . seizure, then m the former case by the general law, and 111 the latter case by the special enactment of the statute of the 25th of April, 1810, ch. 64. S.T. the de- and certificate are each good bars to the action, , . y But if there be a decree of acquittal and a denial'of such certificate, then the seizure is established conclusively . / ' he tortious, and the party is entitled to bis: full.dama- . ,, . . ges for the injury.
If the ter a^etfndem"nation, or pcquitthi with a certificate eausq"of seizor0’ cer^Icate may be ed m bar.
_ But if upon the acquittal, a certificate is ..refused, the Súsivcly estaWished to be tortious j and the-fact of forfenfire cannot be pleaded in íguBU,draTO in question in the state court.
Thé cases also- of Wilkins v. Despard, (6. T. R. 112.) and Roberts v. Witherhead (12 Mod. 92. Salk. 323.) have been relied on to shd.w that a court of , , - common . law many entertain the question of lorfeiture> notwithstanding the exclusive jurisdiction 'of exchequer in rem. But these cases do not Sustain - the argument. They were both founded on the act of navigation; 12 Car. 2. Ch. 18. s. 1. which ¡among other things, enacts that one third of .the forfeiture shall go to him “who shall seize, inform, or sire for the same in amj court óf record” So that at js apparent that in respect to forfeitures under this statute, the exchequer had not ®ji exclusive jurisdiction, 'but that; the other courts of common law had *315 At least a concurrent jurisdiction! And if these cases clid not admit of this obvious distinction, certainly they could not be admitted to govern this court in ascertaining a jurisdiction. vested by the constitution and laws of the United States exclusively in .their oww courts.
The decision exclusive junsdietion, is completely the "judgment ^[^vhe» íh® *am® sub" jedt matter comesIncidenverey.in oontr°
Tt is, therefore, clearly our opinion, that a state court .hhs no legal authority to entertain the quesfion of foffeiture in this cas,e; and that it.exclusively belonged to the cognizance of the proper court of the United States. Indeed no principie of general law seems better settled, than that the decision oi a court of a peculiar and exclusive jurisdiction must be completely hind- . . • .. mg upon, the judgment of every other court, m which the snrdie subject matter comes incidentally in controwersy. It is familiarly known in its application tó the sentences Of ecclesiastical courts, in the probate of . drills and granting of administrations of.personal estate; te the sentences of prize courts in all matters of prize jurisdiction ; and to the sentences of eodrts of admiralty and other courts acting in rem, either to. enforce forfeitures or to decide civil rights.
In the preceding discussion, we have been unavpidably led to consider and affirm the conclusiveness of the sentence of a court of competent jurisdiction proceeding in rem as to the question of forfeiture; and a fortiori to affirm it ili a case where there is an exclusive jurisdiction. In clases of condemnation the authorities are so distinct and pointed, that it would, after the Very: learned discussions in tha state courts, be a. vtaste of time to examine them at large. . Nothing caji be better settled, than that a sentence of condemna *316 tion is, in an action of trespass for the . property ttite0, conclusive evidence against the title of the plaintiff, (See Harg. Tracts, 467. and cases there cited. Thomas v. Withers, cited by Mr. Justice Buller in Wilkins v. Despard, 5 T. R. 112. 117. Scott v. Shearman, 2 W. Black. 977. Henshaw v. Pleasance, 2 W. Black. 1174. Geyer v. Aquilar, 7 T. R. 681. and case cited by Lord Kenyon, Id. 696, Meadows v. Dutchess of Kingston, Ambler’s Rep. 756. 2 Evans' Potheir on Obligations, 340 to 367.).
_ ... PttjaSietSa conclusive, «entena eondemnation <3f acquittal.
A. distinction, . however; ha», been taketi >b4 *t-tempted to. be sustaifaed'at the bar* between the effect , . . , „ ,. * of a’ eeritepee ofconderanatfon and ,óf á sentence of It.ia admitted that the former i» c.onclug;ve . bnt it is said that it is. otherwise aft, to the latter, for it Ascertains no fact; It is; certainly incumbent on .the par ty-who asserts such a distinction to prove jtg existence by direct, authorities, or induction» from known and. admitted principles, In the Duchess of Kingston’s case* (11 State Trials. 261. Runnington Eject. 364. Hale. Hist. Common Law by Runnington, note, p. 39. &c.) Lord Chief Justice J)e Grey declare»' that' the rufo of evidence must1 be,r as it is often, declared tó be, reciprocal;, and' that, in all cases.in which• the .sentences favourable to the party are to b§ admitted as conclusiyf? evidence for him. the sentences, if unfavourable, are, in like manner, conclusive evidence against him. .This is the' language of very, high authority, since it.is the united, opinion of all the judges of England ; apd though,.delivered, in .terms applicable strictly .to. a criminal suit, must-he *317 doomed equally to apply to civil suits and sentences. And upon principle, where is there to be found a subsfaatial difference between a sentence of condemnstion and of acauittal in rern ? If the former ascertains and fixes the forfeiture, and, therefore, it is conclusive, the latter no less ascertains that mere is no. forfeiture, and, therefore, restores the property to the claimant. It Cannot be pretended that a new seizure might, after an acquittal, be made tor the same sub-posed; offence;. or if made, mat the former sentence Would not,'as evidence, be conclusive, and, as a bar, be peremptory against the second suit in rent. And if conclusive either way, it must be because the acquittal ascertains the fact that there was no forfeiture. .And’if the fact.be found, it is strange that it cannot be •evidence for the party if found one way and yet can hbi evidence against him, if found another way. If such were the rule, it would be a perfect anomaly in the láw, and utterly subversive of the first principles of re ciprocal justice. The only authority relied on for this purpose is a dictum in. Butter's Nisi Prius, (245.) where it is said that though a conviction in a court of •criminal jurisdiction be conclusive evidence of the fact, ilit aCterwaids come collaterally in 'Controversy in a -coart of Civil, jurisdiction; yet an acquittal in such wxurt is no proof of .the reverse, for an acquittal ascertains ho fact as a conviction does. The case relied on to support this dictum, (3 Mod. 164.) contains nothing which-lends any countenance to it. (Peake's Evid. 3d ed. p. 47,48.) "But assuming it to be good law in respect to criminal suits, it has nothing to do with pro *318 ceedings in rem. Where property is seized and libelled as forfeited to-the government, the sole object of the suit is to ascertain whether the seizure be.rightful, and the forfeiture incurred or not. The decree ■ of the court, in such case,"acts upon the thing itself, and binds the interests of all the world, whether any party actually appears or not. If it is condemned, the. title of the property is completely .changed, and the new- title acquired by the forfeiture travels with the thing in all its future progress.' If, on the other hand, it is acquitted, the taint of forfeiture is completely removed;, and cannot be re-annexed to it. The original owner stands upon his title -discharged of any latent claims, with which the supposed forfeiture may have previously infected it. A sentence of acquittal in rem does, therefore, ascertain a fact, as much as a sentence of condemnation ; it ascertains and fixes the fact that the property is not liable to the asserted claim of forfeit" ure. It should therefore d>e conclusive upon, all the • world of the non-existence of the title of forfeiture, for the same reason that a sentence of condemnation is conclusive of the existence of the title of forfeiture. It' would be strange indeed, if, when the forfeiture ex directo could not be enforced against the thing, but by an. acquittal, was completely purged away, that indirect», ly. the forfeiture might be enforced through the seizing officer; and that he should be at liberty to asseit a twtie for the government, which is judicially abandoned by,.or conclusively established against, the government itself.
*319 One argument farther has been, urged at the bar on this point, which deserves notice. It is, that the sentence of acquittal, ought not to be conclusive upon the -^original defendants, because, they were not parties to ' that suit. This argument addresses'itself equally to a seatehcé of condemnation and yet in such case .this sentence would have been conclusive evidence in fa-r voiir of the defendants. The reason, however, of this ruleis.to be found in the nature of proceedings in rem. To.such proceedings all persons having an - interest 'pi title in the subject matter are, as we have already star ted, m law, deemed parties; -and the decree of the court is conclusive upon all'interests and titles in controversy before it. The title of forfeiture is - necessary ly in controversy in a suit to establish that forfeiture ; and therefore all persons having a right or interest ,in establishing it (as'the seizing officer has.) are, inlegq]! contemplation, parties to the suit. It is a great mis? tákie to consider the seizing officer as a mere stranger to the suit. He virtually identifies himself- with the government itself, whose asrent he is, from the ípoment of the seizure-up to the termination.of the suit, His own will is bound up -in the acts of the government in reference to.the suit: For some purposes, as. for ipstan.ee to procure a decree of distribution after condemnation, where he is entitled to share in the forfeiture, or to óbtain .a. certificate of reasonable • causé of seizure after an acquittal, he may ihake himself a direct' party to .-the suit, and in. all other cases hie. is deemed to be ■ present and represented by the government itself, ¿By the very, act of seizure he agrees to. become a, party †» *320 the suit under the government; for in no other H&ttner can he show an authority to make thp seizure, or to enforce the forfeiture. If the government ret fuse to adopt his acts or waive the forfeiture; there is an end to his claim: he cannot proceed to enforce that which the government repudiates. In legal propriety, therefore, he cannot be deemed a stranger the decree in rem; he is at all events a privy, and'an such must be bound by a sentence which ascertains the seizure to be tortious. But if he were a mere stranger; he would still be bound by such sentence^ because the decree of a court of competent jurisdiction in rem is, as to the points directly in judgment, concht- . sive upon the whole world.
Upon principle, therefore, we are of opinion that the sentence of acquittal in this case, with a denial of a certificate of reasonable cause of seizure, was conclusive evidence that no forfeiture was, incurred; and that the seizure was tortious : and that these questions cannot again be litigated in any other forum. And if the point had never been decided, we should from- its reasonableness and known analogy to other proceed^ ingS} have had entire confidence in the correctness of the doctrine. But there are authorities directly ¡hit point which have never been overruled, potas far „as we know ever been brought judicially «into doubt. Above a century ago it was decided by Mr. Baron Price, (12 Vin.- Miridgmitotj A B, 22. p. 95.) that an acquittal ,in the 'exfchequer was conclusive evidence of the illUgi&ty Of the feeizuré, and he refused in thát case (whifch was trover fot the goods seized) to let the parties in *321 to. contest the fact over again. This case was cited as undoubted law by Mr. Justice Blackstone, in his elaborate opinion, in Scott v. Shearman, (2 W. Bl. 977.;) and the doctrine was fully recognized by the court, and particularly fay Lord Kenyon, in Cooke v. Sholl, (5 T. R. 255.) although that cause finally went off uponi another point. . In all the cases which have been decided on this subject, no -distinction has ever been tajeen between a condemnation and an acquittal in rem, and the manner in which these cases have been cited by bhe court, obviously show that no such distinction was. ever in their contemplation. • If to these decisions we add the pointed language of Lord Chief Justice De Grey, (in the Dutchess of Kingston’s case, 11 State Trials, 218. &c.) “tnat the rule of evidence must be, as it is often declared tobe reciprocalthe declaration of Lord Kenyon, in Geyer v. Aguilar, 7 T. R. 681. 996.) that *‘where there has been a proceeding in the exchequer, and a judgment in rem$ as long as that judgment remains in force it is obligatory upon the parties who have civil rights depending on the same question;” and the generul rule laid down by Lord Apsley, (Meadows v. Dutchess of Kingston, Amb. Rep. 756.) that where a matter comes to be tried in “a collateral way, the decree of a court having competent jurisdiction shall be received as conclúsive evidence of the mátter,” ex dirbeto determined; there seems a weight of authority in favour of the doctrine, which it is very-difficult to resist. We may add, that in a recent case whick was not cited at the argument, (The Bennet, 1 Dodson’s Rep. 175. 180.) where a.ship had been.captur *322 e<3 as a prize, as being engaged in an illegal voyage an<^ actlu^ed ^y tbe .sentence of a vice-admiralty court, Sir. W. Scott held, that by such sentence .of a-competent tribunal, the question had become res adjudícala, and might be opposed with success as a bar to any inquiry into the same facts upon a second capture during the. same voyage. Yet here the parties, who -were, captors, were different; and the argument might have been urged, that the acquittal ascertained no fact. The learned judge, however, considered the acquittal conclusive proof against the illegality of the voyage, and that all the world were bound by the sentence of. acquittal in rem. And the sanie doctrine was held by Mr. Justice Buller, in his very learned opinion in Le Caux v. Eden, (Doug. Rep. 594. 611, 612.) a
*323 This view of the case would be conclusive agaipst the admission of the evidence offered by the original defendants at the trial, as a justification of the as-• serted trespass. But the other point which has been stated, and which involves the.-construction of the act of 1794, ch. 50. s. 3, is not less decisive against the defendants. That act indicts a forfeiture of the ship, áte., in cases where she is fitted out and armed, or attempted or procured tó be fitted out and armed, with the intent to be employed “.in the service of any foreign prince or state, to cruise or commit hostilities upon the subjects, citizens or property of another foreign prince or state with whom the United . States are at peace.” The evidence offered . and rejected, was to pro ve that the ship was attempted to be fitted out and armed, and was fitted out and armed, with intent that she should be employed in the ser-' vice of that part of the island of St. Domingo which was then under the government of Pelion, to cruise and coanmit hostilities upon the subjects, citizens, and. property of that part of the Island of St, Domingo which was then under the government of Christophe. *324 No evidence was offered to prove, that either of these governments was recognised by the government óf the United States, or of France, “ as a foreign prince or stateand if the court was bound to admit the evidence, as it. stood, without this additional proof, it must, have been upon the ground that it was bound to take judicial notice of the relations of the country withJ foreign states, and to decide affirmatively, that Petion and Christophe were foreign princes within tjjg purview of the statute. No doct ne is better r ... . established, than that it belongs-exclusively to go- „ , . ,, ¶ to recognise new states m the revolutions which, may' occur in the world; and until such i«cognition, either by our own government, or. the go vernment to which the new state belonged, court* . _ . - . of justice ‘are bound to consider the ancient state of things as remaining unaltered. This vías ex. pr ss2y by this court in the case of Rose v. Himely, (4 Cranch, 241.) and to that decision on , . , , , . . • this' point we .adhere. And the. same doctrine is clearly sustained, by the judgment of foreign tribuna¡g> (The Manilla, 1 Edwards R. 1. The city of Berne v. The Bank of England, 9 Ves. 347. Dolden v. Bank of England, 10 Ves. 353. 11 283.) If, e ' ’ . .. therefore, this were a fact proper for the consideration of a. jury, and to be proved itypais, the court below not fr°un(f to admit the other evidence, unless ^jg fact Was proved in aid qf that evidence, for . „ . . . , ’ without it no forfeiture could be incurred. If,, on'the other hand, this was matter of fact,, of which the • court were bound judicially to take cognizance, then court were right in rejecting the evidence, for as *325 far as we have knowledge, neither the government of Petion nor Christophe have ever been recognised as a foreign state, by the government of the United States, or of France.
It is theexdusive. right of governmentsto acknowledge new voiuüon s of the tll°suchand ? nition by our government,or bythattowhich previously bel longed, courts of justice bound to con aider thé an cient order of máimng^ un changed,
The rival ehiefs m the island of St. notforeignplin °fi794, ch. 5°. prohibiting the fitting out any vice fofanySfo etafe.^to cruise Bjgaínstany
*325 • In every' view, therefore, of this case, the state court were right in rejecting the evidence, so. far as it was offered in justification. Was it then admissible in mitigation of damages ? Upon this point we rfealíy do not entertain the slighest doubt. The evidence has no legal tendency to show that any forfeiture had been incurred, and upon the. proof, already) in the causé, the seizure was established to be tortious; The plaintiff admitted that the defendants had acted without malice, or an intention of oppression.. Under such circumstances, he waived any claim for rindiCr tive damages, and the state court very properly:direcceá the jury, that the plaintiff could only recover the actual damages sustained by him; And in rio pOssihld shape, consistently1 with the rules of law, could the-cvidence diminish the right of the plaintiff to recover his actual damages. We have taken notice of this point the more, readily, because, it was pressed at the bar with considerable . earnestness. Hut in strictness of laV) the point is not subject to our revision. We have n© right j on a writ of érror from a. state court, under the act of congress, to inquire into the legal correctness 6f the rule by which the damages were ascertained and assessed. There'is ho law of the United States, which interferes withj or touches, the question of damages; It is a question depending altogether upon the common lawi and the act of congress . has expressly preciu *326 tied us frrtm a consideration qf such a question. Wheth* .er such a restriction can be defended upon public policy, or principle, may well admit of most serious doubts.
We may now pass to the consideration' of the second plea, which asserts, as a defence,a seizure under the laws of the United States, by the express instruction of the president,' for a supposed forfeiture in rem, . and attempts to put in issue the question • whether such forfeiture was incurred or not. If this plea- was well pleaded, then a question may properly be said to arise within the meaning of the 25th section of the judiciary act, and as the state court decided against the right and authority setup thereon,, the decision is re-examinable in this court. Several objections have been urged at the bar against the sufficiency of this plea upon technical grounds ; and if these objections are well founded, then it may be admitted that the court below may have given judgment on these special grounds, and not have, decided against the right and authority set up under the United States.. In the first place, it is argued, that this plea 'is bad, because'it does not answer the whole charge in the declaration,-the plea justifying only the taking and detention, and containing no answer to the damaging, spoiling, and conversion of thq property -charged in the declaration. We are, however, of opinion, that the'plaintiff can take nothing by this- . objection. The gist of the action in. this case was the taking and detention,, and the damaging, spoiling, and conversion were matter of aggravation only; *327 and it is perfectly well settled, that a plea need answer only the gist of the action, and if the matter alleged in aggravation be relied on as ■ a substantive trespass, it should be replied by way of new assignment. (Taylor v. Cole, 3 T. R. 292. S. C. H. Bl. 555. Dye v. Leatherdale, 3 Wils. R. 20. Fisherwood v. Carman, cited 3 T. R. 297. Gates v. Bayley, 2 Wils. R. 313. 1 Saund. R. 28. note 3. Cam. Dig. Plead, E. 1. Monprivatt v. Smith, 2 Camp. R. 175.) Independent, however, of this general ground, there is, in this particular, case, a decisive answer to the objection; for if the matter of the plea were true and well pleaded, then by the forfeiture the property was completely divested out of .the plaintiff; and, consequently, neither the conversion nor damage were any injury to him.
t^e'gist of the action, and if the matter al aggra x¡ed va as a A plea need it, ■ of new assign
p^^na^h*8
But there are other defects in this plea which, in our judgment, are fatal. In the first place it is not alleged that the'ship and her equipments were forfeited for any offence under the laws of thé United States. It is true that it is stated, that the ship was attempted to he fitted out and armed,'with intent that she should be employed in the service of a foreign state, See. to commit'hostilities-upon the subjects óf another foreign state, &c. contrary to the statute in' such case made and provided. But it is not added, whereby and for the cause aforesaid she became .and was.^forfeited to the United States.. Nor is this-deficiency supplied by the subsequent averment, that the ship was, by the instructions of. the president, seized “as forfeited t'o thé use of the United States;” for Ihe manner and’cayse of the *328 forfeiture* ought to be directly stated. The plea is, therefore, not only argumentative, but it omits a substantive allegation, without which it could not be sustained as a bar.
In the next place, the plea is bad, because it does pot aver that the governments of PetioP and Christoph? are foreign states which have been duly recognised, ás such, by the government of the United States, or of France, which, for reasons already stated, was tfpcesspry to complete the legal sufficienóy of the plea.
And in our judgment a still more decisive objection is, that the plea attempts to draw to the cognisance of a state court a question of forfeiture under the laws oy the United States, of which the federal courts have, by the constitution and laws of the United States, an exclusive jurisdiction. For the reasons already mentioned, if the suit for the forfeiture was .still pending wh'étí the action was brought, that fact ought to have beep pleaded in abatement, or a temporary bar to such action: If the action was brought before.proceediñgs inrem had. been instituted,' that fact' ought to have been pleaded, with an allegation that the jurisdiction of the question ■ of forfeiture exclusively belonged to the district court of the district where the seizure was . made, which would have' been a plea in the nature of a plea to the jurisdiction of the state court: If the suit were.determined, then a condemnation, or an acquittal with a certificate of,reasonable cause of seizure, .ought to have been pleaded, as a general bar to the action. These are all the legal defences ‘which the mere seizure could justify; and if these all failed, then the *329 seizing officer must have been deemed gui, -y of the trespass. The plea then stops short of the allegations .which the seizing officer. was bound to make to sustain his defence, and it attempts to put in issue matter which, standing alone, no court of common law is competent to try. The demurrer then may well be sustained to this' plea, since the party demurring admits nothing except what'is well pleaded, and the plea being had in substance, there is, in point pf lajvs no confession of any forfeiture.
under the act of 1794, ch. so. state the partícula prince or state theshipwM*. sruwe,.
The third plea differs iri several respects from the second, and is that on which the couit have felt their principal difficulty. It asserts that the ship was attempted to be fitted out and armed, with intent that she should be employed in the service of some foreign state, to commit hostilities upon the subjects of -another foreign state with which the United States were then at peace, contrary to the form of the statute in such case made and provided j and that the defendants by virtue of the instructions of, the president, “did take possession of, and detain,”the said ship, &c, “in order to the execution of the prohibitions and penalties of the act in such case made and provided.” It omits to allege any forfeiture of the ship, or that she was seized as forfeited. So far then as the plea may be supposed to rely on such forfeiture as a justification, it is. open to the same objections which have been stated against vocond nlesi secona piea.
Another objection has been urged’at the bar . i , . , , , , , ^ this plea, which does not apply to the second; It is, that it does not specify the foreign state in whose *330 vice, or against whom, the ship was intended to be cmployed. As the allegation follows the words- of the statute, it has sufficient certainty fora libel or information in rem for the asserted forfeiture under the statute? and, consequently, it has sufficient certainty for a plea. Indeed, there is as much certainty as there would have been, if it had been averred that it was in the service of er against, some foreign state unknown to the libellant,which has been adjudged in this court, to be sufficient, in an information of forfeiture. (Locke v. The United States, 7 Cranch, 339.
But the main objection to this plea js that it ' attempts. to justify the taking possession, and detaining of the ship, under the- instructions of the president, when the facts stated in the plea do not bring the case within- the purview of- the statute of 1794, ch 50 which is relied on for this purpose. This statute, in the Seventh section, provides, that in every case in Which á vessel shall be fitted out and armed, or attempted to be fitted out- and armed, or in which the force of any vessel of war,, cruiser, or other armed Vessel, shall be increased or augmented, or in which any military expedition or enterprise shall be bégun, Or set on foot, contrary to the prohibitions and provisions of that act, and in'every case of the capture of a ship or vessel within the jurisdiction or protection of the-United States, and in every case in which any process issuing out of any court of the United State's shall be disobeyed or resisted by any person or persbns, having the custody of any vessel of war, cruiser-, ar other, armed vessel of any foreign prince or state, *331 or of the subjects or citizens of any such-orince or state; in every sucji case, it shall be lawful for the president of the United Slates, or such other person as he shall have empowered for that purpose to employ such part of the land or navel forces of the United States, or of the malitia thereof, as shall be judged necessary for the purpose of'taking possession of and detaining any such ship or véssel, with her prize or prizes if any, in order to the execution of the prohibitions and penalties of the act, &c. It is to be recollected that this third plea does not- allege any forfeiture, or justify the taking and detaining of the ship for any forfeiture; and that it does not allege that the president did employ any ~part of the land or. navel forces, or militia of the United States for this purpose, or that the original defendants, or either of them, belonged to the navel or military forces of the United States, or were employed in any such capacity, to take and detain the ship, in order to the execution of the prohibitions and penalties of the act. But the argument is, that as the president. had authority by the act to employ the navel and military forces of the United States for- this purpose, a .fortiori) he might do. it by the employment ofcivil force. But'upon the most deliberate consideration, we are of a different opinion. The power Hips entrusted to the . . , . ‘ V , , , .. . / . president is of-a very high and delicate nature, and iféstly intended to be-exercised only when, by the qrdinary process or exercise of civil authority, the.pur.por ses of the law cannot- be effectuated. It is .to be erted On extraordinary occasions, and subject, to that high responsibility which all executive acts necessarily *332 Involve. Whenever it is exerted, all-persons Who afef in Obedience to the executive: instructions, ill cases-within the act, are completely justified in taking pbS* session of,..and detaining the offending vessel, and'arfe not responsible in damages for any injury Which the .party may Suffer by reason of such proceeding! Stifely it never could have been the. intention 0-f congress, 'that such a power should be allowed as a shield to thfe seizing officer, in cases where that seizure might be made by the ordinary civil means? One Of the cases put in the section is, Where any process Of the courts of the United States is disobeyed - and resisted; and this case.abundantly.shows, that the' authority of thfe president was riot, intended to be called into exercise, unless where military and naval force were necessary to ensure the execution of the laws. In terms thfe section is confined to, -the employment of military and naval forces; and there is neither public policy ndi principíe lo justify án extension of the prerogative, beyond the terms in which it is given. Congress might he perfectly willing to entrust the president With the power to take and detain, whenever, in his opinion, the case was. So-fiagratit that military or haval force was necessary to enforce the lawá, and yet yritli great propriety deny it, where, From circumstances of the case, the civil '' officers of the gó^Verntnent might, upon their private responsibility, .without any danger to the public peace, completely execute them. It is certainly against the general theory of our institutions to’ create great - discretionary powers by’ implication; and in the preseiit ill- *333 stance we see nothing to justify it. The Ihird plea is, therefore, for this' additional reasbn, bad in its Very siibs'tance, and the state court were right in giving judgment on the demurrer for the Original plaintiff.
The 7th sec on794,yh.so! except tocase» where a rei or. deten b^nforMd'by h wasne cessnry m the president’s o ploy "na-ral'or raiktary jxrtf er.
*333 The judgment of the court.for the correction of errors of the state of New-York, is affirmed with damages at the rate of 6 per cent, upon the judgment, from the rendition thereof, and costs»
Mr. Justice Johnson.
As the opinion delivered ift this case goes into the consideration of a variety of topics which do not appear to me to be essential to the Case, I will present a brief view of all that I consider as now decided.
Three pleas are filed to the .action. The first, is the general issue, under which, according to the practice of the state from which the .case comes, notice was given that the .forfeiture Would' be given in eti • dence.
The second pleá is a justification, on the ground of a seizure under the order of the president, for the forfeiture incurred under the third section of. the act of 1794.
The third is. a justification under the' order of the president, to detain for the'purpose of enforcing the prohibitions '.and penalties incurred under the third Section. And this order is supposed to have been issued under authority given in- the .seventh section.
On the first plea issue was taken ; and on the trial the state court refused to admit evidence of the fo? • *334 feiture, oh the ground that the acquittal in the district court was conclusive against the forfeiture. And on this point this court is of opinion that the state court decided correctly. This court is also of opi- . J . . 1, mon, that the state court could not have tried the of forfeiture arising under the laws of the States. But this point would have been fatal suit, n°t to the defence, had it been properly pleaded.
Acquittnl in the district court Se*ques°tionoft0 forfeiture.
Defect of the contafnnig;8
The seventh section of the act of 1794 did not authorize orfer^private sebse'but'oníy rnilitary°^Qnd naval force to sureT* * 861
To the second and third pleas the defendant ciemurbut as the second plea contained only an argu- and, of course, defective averment of the forfeiture, viz. u seized as forfeited,” that is u because forfeited,” that plea did not bring up the question of forfeiture,.or any.question connected with it.
Neither does the third plea bring up the question of forfeiture : for the justification therein relied on is wholly • independent of the forfeiture, and rests upon order of the president to detain for trial, in effect. \ . . Aftd hence the only other point in the case is, whether the seventh section of the act empowered the president to issue such an order. And on-this point we are °P^n^on> that there is no power given by that act .to authorize a seizure, but only to call on the.military or naval forces to enforce a seizure when-nece’ssary. The defence set up is-not founded upon the exercise of s ch a power, but upon a supposed order -tp the defendants, in their private individual character, to take and detain. The act, therefore, does not sustain the defence.
Judgment affirmed.
*335 Mr. D. 1?. Ogden inquired to which of the state courts the mandate to enforce the judgment was tobe transmitted.
Mr. Chief Justice Marshall.
We must consider the record as still remaining in the supreme court of New York, and consequently the mandate must be directed to that court.
Mandate to the supreme court óf New-York,
Jvogment. This cause came on to be heard on the transcript of the record of the supreme court of judicature of the people of the state of New-York, returned, with the writ of error issued in this case, and was argued by counsel. On consideration whereof, it is,adjudged and ordered, that this court having- the power of revising, by writ of error, the judgment of the highest court of law in any state,, in- the cases specified in the act of congress, in such case provided, at any time within five years from the rendition of the judgment in the said courts, have the power to bring before them the record of any such judgment, as well from the highest court of law in any state, as from any court to which the record of the said judgment may have been remitted, and in which it may be found,' when the writ of error from this court is issued, And the court, therefore, in virtue of the writ of error in this cause,, do proceed and take cognizance of this cause upon the transcript of the record now remaining in the supreme court of judicature of the people of the state of New-York 5 and they do hereby adjudge and order, that the judg. ment of the court for the trial of impeachments and *336 correction of errors in this case, be, and the same is hereby affirmed, with costs and damages, at the rate of six per centum per annum on the amount of tne judgment of the said court, fo.r the' trial of impeach-. ments and correction of errprs of the. state of New-York, to be computed from the time o-f the rendition of the judgment of the said court for the trial of impeachments and correction of errors of the -state of New York.

 In a recent case, in the court.of exchequer in England, it has been determined, that a judicial sale of a vessel found at sea and brought into port, as derelict, under an order of the instance court of admiralty, on the part , of the salvors and claimant, (without fraud and collusion,) is available against the crown’s right of seizure for a previous forfeiture incurred by the ship having been guilty of a forfeitable offence against the revenue laws;, although the erawn. was not a party to the proceeding in the admiralty court, other than by the king’s' procurator-general- claiming th® vessel as a droit of admiralty ; and although no decision of droit, or no droit was pronounced, and the' sale took place pendente lite under an interlocutory order. It was held,, that the crown should have claimed before1 the court, either as against the ship in the first instance, or subsequently against the proceeds of tbe sale, which- were-paui *323 into the registry to answer claims under the' order of sale, or have moved a prohibition. That the ' warrant for arresting the ship by the admiralty, and the ■ process of citation, was notice to all the world of -the subsequent proceedings: And that in pleading such sale, in defence to an information in the exchequer, the facts shoul be put specially on the record, so that the attorney-genera! might demur to, or traverse them< The Attorney-General v. Norstedt, (claiming the ship Triton,) 3 Price's Exchequer Rep. 97, See Wynne's’ History of the Life of Sir Leoline■ Jenkins» vol. II, p.763.

 See the authorities cited ante, p. 289.

 5 T. R. 112