STANDARD MARINE INS. CO., LIMITED, OF LONDON, ENG., v. NOME BEACH LIGHTERAGE & TRANSPORTATION CO.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

No. 1,579.

1. APPEAL AND ERROR (§ 1058*)—REVIEW—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Error, if any, in excluding testimony given on a former trial by a witness since deceased, was harmless, where a deposition of the same witness was introduced in which he gave substantially the same testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4200; Dec. Dig. § 1058.*]

2. JUDGMENT (§ 812*)—CONCLUSIVENESS—PERSONS CONCLUDED.

In an action by a cargo owner against an insurer to recover for loss of the cargo, the record in a suit in which the vessel and cargo were sold for salvage was admissible in evidence; the decree being binding on all parties in interest, and it was immaterial that the final decree of distribution in the salvage suit had not been entered at the time the insurance action was commenced.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 812.*]

In Error to the Circuit Court of the United States for the Northern District of California.

For opinion below, see 156 Fed. 484.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William Rix, for plaintiff in error.
Nathan H. Frank, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. When this case was formerly before this court (Standard Marine Insurance Co. v. Nome Beach L. & T. Co., 133 Fed. 636, 67 C. C. A. 602, 1 L. R. A. [N. S.] 1095), we reversed a judgment rendered in favor of the defendant in error on a policy of insurance covering certain articles laden on the barkentine Catherine Sudden for a voyage from the port of San Francisco to Nome, Alaska. The judgment was reversed, and the cause remanded for a new trial, on the ground that the evidence of the master of the vessel, Capt. Panno, indicated that the loss of the cargo resulted directly from the master's act in designedly undertaking to force the vessel through floating ice in order to arrive more quickly at his destination, and secure a better market for his cargo, with full knowledge of the dangers to be encountered, and with ample time to have avoided them. Such conduct we held to be not mere negligence, but willful omission to perform a legal duty, and an intentional commission of a wrongful act, and we held that the insurer was not liable for loss caused thereby. On the second trial of the cause a verdict was again returned for the defendant in error, and judgment was rendered thereon. The evidence adduced on behalf of the defendant in error on the second trial differed from that which was introduced on the first trial, in that testimony of witnesses was taken to establish the fact that it was usual and customary with vessels on the voyage to Nome, when reaching floating ice, to enter the same, and proceed through it by selecting leads or channels and following from one opening to another, thus making their way forward by degrees.

The assignment of error which is now principally relied upon is that, on the trial in the court below, the plaintiff in error was denied the right to introduce evidence of the testimony given by Capt. Panno on the first trial; it being shown that he had died since so testifying. That such testimony was admissible, the plaintiff in error contends, is shown by Ruch v. Rock Island, 97 U. S. 693, 24 L. Ed. 1101, and Mattox v. United States, 156 U. S. 237, 15 Sup. Ct. 337, 39 L. Ed. 409. The defendant in error, on the other hand, contends that in the federal courts, by reason of section 861, Rev. St. (U. S. Comp. St. 1901, p. 661), evidence of the testimony given by a witness on a former trial, deceased at the time of the second trial, is not admissible; citing Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117, Diamond Coal & Coke Co. v. Allen, 137 Fed. 705, 71 C. C. A. 107, and Mulcahey v. Lake Erie & W. R. Co. (C. C.) 69 Fed. 172. We deem it unnecessary to pause to consider which of these two contentions is correct; for, as we read the record, it appears therefrom that, if it was error to exclude the proffered testimony, the error was harmless, for the reason that substantially the same testimony is to be found in the deposition of Capt. Panno taken prior to the first trial, and introduced on the second trial, and in the testimony of Capt. Simmie, who testified on the second trial. It is not necessary to relate in detail all of the testimony of Capt. Panno on the first trial which the plaintiff in error offered on the sec-

ond trial. It all related to his navigation of the vessel after reaching the ice, and to his efforts to get through the ice. The most important portions of it are the following:

"Some of these small chunks that I noticed floating about were a quarter of a mile, a mile, and five miles apart. They were not very numerous. I sailed right on, and did not turn around and go back. My object was to get through it. When I got to the ice itself, I found leads once in awhile."

He testified to sighting a number of vessels about the time when he first struck the ice, and said that they were all in the position in which he was, steamers and sailing vessels bound for Nome with the same kind of cargo that he had. "We were all trying to get through as soon as we could—as early as we could get there. We wanted to market our goods. The next morning after sighting the ice it was broken, but rather larger—larger in proportion. * * * On the third day we could not get through it. We got in a lead, and we could not get through. I tacked ship and stood back again, and found a lead I suppose 10 or 15 miles. I went right into it, still fighting to get up to Nome. * * * There was a piece of ice that I supposed I would go clear of, and down under water it stuck out like that desk, and hit her bow down under water. * * * The moment I struck the ice there was a hole in my bow." In his deposition above referred to, which was admitted in evidence on the second trial, Capt. Panno deposed:

"When I first sighted the ice, I presume I might have put about if I desired, and have gone to Dutch Harbor. As a matter of seamanship, I could have done it; for I could have come back to San Francisco if I so desired. I was eight days in the ice before I was taken out of the ice and to Nome. * * * At the time I got into the ice some came together a little. There would be cakes of ice all through."

Capt. Simmie, a master mariner of 30 or 40 years' experience, who was on board the vessel, testified:

"About three or four days after we got into Behring Sea, we encountered the ice. It was small drift ice at first, gradually getting into larger pieces and floating fields, drift ice. * * * Danger was first to be apprehended when we got into the ice. We could not get any further. We got to the end of the lead. The ice apparently is constantly on the move with open leads, and we followed the leads as far as we could, and then made fast to the ice. * * * After we got into a position of that sort, and the danger was apparent, there was no means by which we could have turned back. * * * The Catherine Sudden sailed in various directions, always making toward the north if possible—toward Cape Nome. Some days the wind was from the south, so that we had a fair wind, and, of course, we could not beat back, because there was not any room to beat back. * * * Then the ice closed in on us, and it was then too late to return."

But it is not necessary to proceed further with the details of his testimony. It is substantially the same as that given by Capt. Panno on the first trial, and is not contradicted by any witness.

The only other assignment of error requiring notice is that the court overruled the objection of the plaintiff in error to the admission in evidence of the record of the salvage suit of Benson et al. v. The Barkentine Catherine Sudden, in the District Court of Alaska, Second Division. The objection was that the record was not binding on the plaintiff in error, and was res inter alios acta. On the argument in this court counsel for the plaintiff in error makes the further objection that

the final judgment in the salvage suit was not rendered until long after the commencement of this action. Neither of these objections is well taken. The judgment in the salvage suit, decreeing the sale of the barkentine for the benefit of the salvors and others, was binding upon all who had any interest in the res. Gelston v. Hoyt, 3 Wheat. 246, 313, 4 L. Ed. 381. As to the second objection, it is true that the final decree of distribution in the salvage case was made after the commencement of this action, but the vessel was ordered to be sold, and default was entered, and an order of reference was made long prior to the commencement of the action. Thereby the defendant in error was deprived of all right and title in the vessel. That the final decree was rendered after the commencement of this action does not render the record incompetent.

The judgment is affirmed.