## UNITED STATES v. POLLASTRINE.
### No. 3184.

Fourth Division.
May 1, 1929.

Louis K. Pratt, of Fairbanks, for claimant.
Julien A. Hurley, of Fairbanks, for libelant.

CLEGG, District Judge.

On the first ground of the exceptions it is contended that section 13 of said act (48 U.S.C.A. § 201) permits the district attorney to file a libel in rem only in a case "in which the disposition of such article is not involved in a criminal prosecution," and that, unless the libel contains an allegation negativing the fact of such disposition theretofore, it is insufficient to give the court jurisdiction.

The contention is that this is in the nature of an exception to the enacting clause defining the offense described in the libel and which denounces the act of possession of land fur-bearing animals contrary to the provisions of the act. Section 8 of the act (48 U.S.C.A. § 195) reads as follows: *"Taking of Animals and Birds Restricted.* Unless and except as permitted by this act [subchapter] or by regulations made pursuant to this act [subchapter], it shall be unlawful for any person to take, possess, transport, sell, offer to sell, purchase, or offer to purchase any game

animal, land fur-bearing animal, wild bird, or any parts thereof, or any nest or egg of any such bird, or, except under regulations of the Secretary of Agriculture, to molest, damage, or destroy beaver or muskrat houses."

There is no exception stated in this enacting clause which requires to be negatived.

Section 13 of the act (48 U.S.C.A. § 201) is as follows: *"United States Attorneys, Duties of.* It shall be the duty of the United States attorney for the division in which any wild animal or wild bird, or part thereof, or nest or egg of such bird, or any gun, trap, net, boat, dog, sled, or other paraphernalia has been seized, or has been used, taken, transported, bought, sold, or possessed contrary to the provisions of this act [subchapter], to institute an action in rem against it for the forfeiture thereof to the United States in any case in which the disposition of such article is not involved in a criminal prosecution; the possession of any wild animal, bird, or part thereof, or nest or egg of such bird, during the time when the taking of it is prohibited, shall, in any such action, constitute prima facie evidence that it was taken, possessed, bought, sold, or transported in violation of the provisions of this act [subchapter], and the burden of proof shall be upon the possessor or claimant of it to overcome the presumption of illegal possession and to establish the fact that it was obtained and is possessed lawfully."

It will be seen that the purpose and function of this section of the act is twofold: First, to impose the duty upon United States attorneys to institute actions in rem; and, secondly, to prescribe a rule of evidence in the trial of actions in rem or criminal actions.

The learned counsel for claimant in support of his contention cites the case of United States v. Cook, 17 Wall. (84 U.S.) 168, 173, 21 L.Ed. 538, which discusses the rule of pleading referred to as applied to criminal actions, from which is quoted the following: "Where a statute defining an offence contains an exception, in the enacting clause of

the statute, which is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception, but if the language of the section defining the offence is so entirely separable from the exception that the ingredients constituting the offence may be accurately and clearly defined without any reference to the exception, the pleader may safely omit any such reference, as the matter contained in the exception is matter of defence and must be shown by the accused."

In 17 Wall. 168, on page 177, 21 L.Ed. 538, the court says: "Few better guides upon the general subject can be found than the one given at a very early period, by Treby, C. J., in Jones v. Axen [1 Lord Raymond 120], in which he said, the difference is that where an exception is incorporated in the body of the clause he who pleads the clause ought also to plead the exception, but when there is a clause for the benefit of the pleader, and afterwards follows a proviso which is against him, he shall plead the clause and leave it to the adversary to show the proviso; which is substantially the same rule in both its branches as that given at a much more recent period in the case of Steel v. Smith [1 Barnewall & Alderson, 99], which received the unanimous concurrence of the judges of the court by which it was promulgated."

And concludes as follows: "Apply those rules to the case before the court, and all difficulty is removed in answering the questions for decision. Neither an exception nor a proviso of any kind is contained in the act of Congress defining the offence, and every ingredient of the offence therein defined is accurately and clearly described in the indictment."

This last statement is applicable to the question before the court, for here the offense denounced in section 8 of the act and section 18 of the regulations is the possession

of land fur-bearing animals, or parts thereof, which have been killed by means of a shotgun and at a date when the killing thereof was prohibited, and the sections contain no reference whatever to an action in rem or to the contents of a legally sufficient libel, and it would appear that, instead of sustaining the contention of claimant, this case is squarely opposed thereto.

Before leaving this branch of the subject, it ought to be stated that heretofore this court, in an oral and unreported opinion, has held that the clause occurring in section 13, namely, "in any case in which the disposition of such article is not involved in a criminal prosecution," in a careful consideration of the entire act, can have no useful purpose therein, nor can a sensible construction be placed upon it.

The court has not access to the library of Congress nor to the proceedings in committees of the House of Representatives or United States Senate before or at the time this act was passed, and is therefore unable to receive aid in the construction of the act from these sources in determining the intention of Congress by the interposition of this clause in section 13.

It is elsewhere provided, in the last paragraph of section 5 of the act (48 U.S.C.A. § 192) that: "All guns, traps, nets, boats, dogs, sleds, and other paraphernalia used in or in aid of a violation of the provisions of this act [subchapter] may be seized, and all animals, birds, or parts thereof, or nests or eggs of birds taken, transported or possessed contrary to the provisions of this act [subchapter] shall be seized within or outside the Territory by any officer or person authorized to enforce the provisions of this act [subchapter], and upon conviction of the offender or upon judgment of a court of the United States that the same were being used or were taken, transported, or possessed in violation of this act [subchapter], shall be forfeited to the United States and disposed of," etc.

And this court has heretofore in the same case held that a proper construction of the language there used, "upon conviction of the offender or upon judgment of a court of the United States," gives to the government the right to institute proper proceedings for the forfeiture in an action in rem of the articles mentioned, either in the case of the conviction of the offender or without such conviction by the judgment of a court of the United States in an action in rem. Manifestly, no criminal court has the jurisdiction upon conviction of an offender for the violation of the act to enter a decree of forfeiture, where a forfeiture is not prescribed as part of the penalty, but such procedure can be had legally only after a full hearing upon notice and opportunity to defend.

It is not obligatory upon the government to institute a criminal action and secure a conviction therein and also to institute an action in rem for forfeiture. The government may either pursue the criminal by prosecution or may content itself with the remedy of forfeiture by an action in rem, or it may use both remedies as it sees fit. In an action in rem, the libel should show either the fact of previous conviction and rely on that, if one has been secured, or the facts themselves may be alleged which would justify a conviction, if one has not been already secured.

On the question raised by the second ground of exceptions and demurrer, the argument is that: "The title to wild animals and birds, while in the wild state, is theoretically in the sovereign or government. The nature of such title is very nebulous and perhaps more imaginary than real. Uncle Sam has no more dominion over wild animals and birds, while in the wild state, than the average citizen has."

And it is argued: "It has always been the law that where one reduces to possession and takes into possession wild animals or birds, the title thereto vests in the taker, although, of course, while his title may be absolute, yet on

the other hand, it may be conditional and subject to forfeiture."

And, further, that: "Under the Alaska Game Law, the title to wild game and fur-bearing animals, when taken into possession, vests in the taker, whether he acquires dominion and control over them legally or illegally."

And it is said further that: "The fatal weakness of the information and libel in this proceeding lies in this: that it is framed upon the assumption that the forfeiture of the title of the game and fur-bearing animals, under our game law, takes place the moment it is illegally taken, whereas the act itself specifies that the forfeiture takes place as a result of a conviction in a criminal action or a decree in a civil action in rem."

Does the act itself specify that the forfeiture takes place as the result of a conviction in a criminal action? All that the act says is that "upon conviction of the offender or upon judgment of a court of the United States" they shall be forfeited. And what does the section mean when it says they shall be forfeited? Is it the title that is forfeited, as the claimant contends, or is it the thing itself?

In the case of the United States v. The Louis Olsen (D.C.) 74 F. 246, 247, decided in 1896, which is a case where the steamer Louis Olsen had been forfeited to the United States and sold for illegal sealing in Bering Sea, and a libel of intervention filed by the North American Company, Judge Bellinger states as follows:

"In case of forfeiture, 'the decree of the court acts upon the thing itself, and binds the interest of all the world, whether any party actually appears or not. If it is condemned, the title of the property is completely changed, and the new title acquired by the forfeiture travels with the thing in all its future progress.' Gelston v. Hoyt, 3 Wheat. 318 [4 L.Ed. 381]. A forfeiture necessarily, as it seems to me, divests every existing right, whether of title or lien, or other interest, in the thing forfeited. There is no reason why it should not extinguish the right of a lien-

holder, equally with that of the owner. 'It binds the interests of all the world.' In Six Hundred Tons of Iron Ore [D.C.] 9 F. 595, the court says:

" 'No matter how long afterwards proceedings are taken to enforce the forfeiture, the right of the government runs back, by relation, to the time of the commission of the wrongful acts, and cuts out all intervening claims, however innocent.' "

In that case the title was originally in somebody besides the government before the forfeiture, but, under the Alaska Game Law, the title to all land fur-bearing animals, such as beaver and the parts thereof, is in the United States, and the title of the United States to them is neither nebulous nor unreal. It is absolute.

This question was long ago decided by the Supreme Court of the United States in the case of Geer v. Connecticut, decided in 1896, 161 U.S. 519, 16 S.Ct. 600, 604, 40 L.Ed. 793. In this case Mr. Justice White, afterwards Chief Justice, wrote the opinion of the court, and he there expounds the principles and analyzes and traces the history of the origin and existence of the right of the state to wild game animals and wild game birds in the wild state, as well as the rights of individuals thereto, and the right of states to control and regulate the common property in game. In that opinion he cites the law of Athens, Roman law, Institutes of Justinian, Pothier, Merlin, Blackstone, Kent, as well as cases from the Supreme Courts of states of the Union, and concludes this phase of his exposition by quoting from the Supreme Court of Minnesota in the case of State v. Rodman, 58 Minn. 393, 59 N.W. 1098, as follows: "We take it to be the correct doctrine in this country that the ownership of wild animals, so far as they are capable of ownership, is in the state, not as a proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common."

And, further, from the Supreme Court of California in the case of Ex parte Maier, 103 Cal. 476, 37 P. 402, 42

Am.St.Rep. 129, as follows: "The wild game within a state belongs to the people in their collective sovereign capacity. It is not the subject of private ownership, except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or traffic and commerce in it, if it is deemed necessary for the protection or preservation of the public good."

It is true that in that case Mr. Justice Field wrote a dissenting opinion in which he quotes from a previous dissenting opinion in 'the case of the Spring Valley Water-Works v. Schottler, 110 U.S. 347, and 374, 4 S.Ct. 48, 28 L.Ed. 173, and, in the case of Geer v. Connecticut, supra, reiterates his dissenting doctrine, namely: "It was a general principle of law, both natural and positive, that where a subject, animate or inanimate, which otherwise could not be brought under the control or use of man, is reduced to such control or use by his individual labor or skill, a right of property in it is acquired. The wild bird in the air belongs to no one, but when the fowler brings it to the earth and takes it into his possession, it is his property. He has reduced it to his control by his own labor, and the law of nature and the law of society recognize his exclusive right to it. The pearl at the bottom of the sea belongs to no one, but the diver who enters the water and brings it to light has property in the gem. He has by his own labor reduced it to possession, and, in all communities and by all law, his right to it is recognized. So the trapper on the plains and the hunter in the North have a property in the furs they have gathered, though the animals from which they were taken roamed at large, and belonged to no one. They have added by their labor to the uses of man an article promoting his comfort, which, without that labor, would have been lost to him. They have a right, therefore, to the furs, and every court in Christendom would maintain it. So, when the fisherman drags by his net fish from the sea, he has a property in them, of which no one is permitted to despoil him."

There is a striking similarity between the dissenting opinions of Justice Field in these two cases and the arguments of the learned counsel for the claimant in this case, else why would it be argued that the nature of the government's title is "very nebulous and perhaps more imaginary than real," and that "Uncle Sam has no more dominion over wild animals and birds, while in the wild state, than the average citizen has"?

The Alaska Game Law now before us must have been prepared, written, and passed by Congress with the knowledge of the existing law as to who was the owner of the property rights in wild game animals and wild game birds in the wild state, and, in legislating to individuals the right to capture them under certain conditions and by certain means, the exercise of such right and permission by citizens carried with it no right or title to the wild game animals or wild game birds unless they were so captured in the manner and by the means provided by the act which confers upon them the permissive right, for section 8 of the act (48 U.S.C.A. § 195), above quoted, provides: "Unless and except as permitted by this act [subchapter] or by regulations made pursuant to this act [subchapter], it shall be unlawful for any person to take, possess, transport, sell, * * * any game animal, land fur-bearing animal, wild bird, or any parts thereof," etc.

The right to take, possess, transport, etc., is given only where such taking, etc., is done under the provisions of the act and the regulations made pursuant thereto, and any departure from the terms of the act or the regulations thereunder constitutes a violation of the act, and section 5, above quoted, provides that the articles therein mentioned shall be seized and forfeited upon the conviction of the offender or upon the judgment of a United States court.

It is true that the conviction or judgment must precede the actual judicial forfeiture, but this does not mean that the forfeiture takes place only after conviction or judgment.

The law on that subject is that, when the actual judicial forfeiture takes place, it dates back to the time of the commission of the act, and the title to the property in the interim between the commission of the act and the judicial forfeiture remains where it always was, that is, in the United States of America, and it is not merely the title, but possession, right of possession, and the use thereof that is forfeited, where the article sought to be forfeited is either a wild game animal or a land fur-bearing animal or a wild bird, or part thereof, for such title is already vested in the United States, and no forfeiture of title is possible. Obviously, however, this same conclusion does not follow where the article is a gun, trap, net, boat, dog, sled, or other paraphernalia, ownership of which, prior to the violation of the act, rested in some person other than the United States, as to which the act ought to contain a provision, like the provision in the Volstad Act (27 U.S.C.A. § 1 et seq.) with reference to liquor, that no property rights shall exist therein where they are being possessed or used in the violation of the act.

Further, the purchase of beaver skins killed with a shotgun by any person, however innocent or how strong his good faith, confers upon him no title. It is the possession of such skins that is denounced by section 8 of the act and section 18 of the regulations promulgated pursuant thereto, and, in the purchase of such skins, the buyer should beware, for section 18 makes no discrimination as to persons, but says it shall be unlawful for "any person" to possess such skins, except as permitted by this act or by regulations thereunder.

If the act should be construed as excluding buyers or other like persons from its provisions, the entire purpose and object, force, and effect of the act would be nugatory, for the reason that the skins of fur-bearing animals pass readily from hand to hand and the defense of want of knowledge is too easily maintained, and the same motive would be present in the capture of illegal skins as in the taking and capture of those that the act permits. The il-

legal hunter and trapper would be placed on a higher plane than the law-abiding citizen, and a premium put upon law violation. Neither this nor any other law contemplates any such absurdity.

Claimant's exceptions and demurrer may be overruled.