**THOMSON CONSUMER ELECTRONICS, INC., Plaintiff/Counterclaim Defendant,**

v.

**INNOVATRON, S.A., Defendant and Counterclaimant**

v.

**THOMSON MULTIMEDIA, S.A., Counterclaim Defendant,**

v.

**THOMSON TELEVISIONES DE MEXICO, S.A. DE CV, Counterclaim Defendant.**

**Civil Action No. 97–2253(JHG)(AK).**

United States District Court, District of Columbia.

April 30, 1998.

Robert Hugh Loeffler, George Brian Busey, Leslie J. Cloutier, Bradley Stuart Lui, Morrison & Foerster, L.L.P., Washington, DC, Rachel Krevans, Harold J. McElhiny, Morrison & Foerster, L.L.P., San Francisco, CA, for Thomson Consumer Electronics, Incorporated.

John Williams Polk, Kevin Michael O'Brien, Baker & McKenzie, Washington, DC, for Innovatron, S.A.

George Brian Busey, Morrison & Foerster, L.L.P., Washington, DC, Rachel Krevans, Harold J. McElhiny, Morrison & Foerster, L.L.P., San Francisco, CA, for Thomson Televisiones de Mexico, S.A.

George Brian Busey, Morrison & Foerster, L.L.P., Washington, DC, Rachel Krevans, Harold J. McElhiny, Morrison & Foerster, L.L.P., San Francisco, CA, for Thomson Multimedia.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff and Counterclaim Defendants (collectively "Thomson") seek in this action a declaration of non-infringement or patent invalidity. Innovatron has counterclaimed for injunctive and legal relief for alleged patent infringement.

The technology at issue involves the Direct Satellite System ("DSS") used by certain direct-to-home or direct broadcast satellite television broadcasters. The DSS consists of components made by a number of manufacturers. Thomson manufactures, *inter alia,* the satellite receiver or dish. Thomson inserts a "smart card" which allows the dish to receive and translate encrypted transmissions. The "smart card" is imported by Thomson into the United States and is made by News Digital Systems ("NDS").

Defendant Innovatron ("Innovatron") is a French company with rights in U.S. patent

# 4,404,464 (" '464 patent"), issued in 1983 and entitled "Method and Apparatus for Electrically Connecting a Removable Article, in Particular a Portable Electronic Card." Innovatron alleges that the smart cards imported by Thomson infringe the '464 patent.

## A. Parallel Proceedings

The parties are engaged in parallel or overlapping proceedings to resolve this dispute. The first proceeding, near final resolution, is pending before the International Trade Commission ("ITC"). Innovatron filed a complaint before the ITC seeking an order blocking Thomson's continued importation of the NDS smart cards. A trial before an ITC Administrative Law Judge ("ALJ") was held from September 29, 1997 to October 7, 1997. The issues before the ALJ were whether the '464 patent is valid and whether Thomson's importation of the NDS smart cards infringes the '464 patent. The ALJ released his final initial determination on March 24, 1998 finding the '464 patent valid and Thomson's importation to be a violation of 19 U.S.C. § 1337. The ITC will decide whether to review that determination by May 28, 1998 and its target date for completion of the investigation is July 20, 1998. *See* 63 Fed. Reg. 17445 (Apr. 9, 1998).

■ Regardless of the final outcome before the ITC, its determination will not formally have preclusive effect in the instant action. *See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568–69 (Fed.Cir.1996). However, if there is appellate review of the ITC's claim construction in this dispute, that will certainly have a pronounced effect, and in practical terms the *stare decisis* effect of appellate review of the ITC construction would have near-preclusive effect with respect to any review of this Court's construction. *See id.* at 1569.

## B. Pending Motions

A number of motions have been filed in this case recently. This Memorandum Opinion and Order will resolve (1) Thomson's Motion to Clarify and Establish Ground Rules for the Markman Hearing; (2) Thomson's Motion for Expedited Briefing; (3) Magistrate Judge Kay's recommendation

that Innovatron's Motion for Sanction be denied; and (4) Thomson's Appeal from Magistrate Judge Kay's Discovery Order. The pending motion to bifurcate shall be addressed in a separate order.

### 1. *Motion for Sanctions*

Some of these can be dispatched in short order. As to Magistrate Judge Kay's report and recommendation to deny Innovatron's motion for sanctions, the Court accepts and agrees with that for the reasons stated therein; Innovatron's motion will be denied.

### 2. *Appeal from Magistrate Judge's Order Compelling Discovery*

■ As to Thomson's Appeal from Magistrate Judge Kay's Discovery Order, that too shall be denied. While this Court certainly took the parties at their word at the initial scheduling conference when they advised that they would proceed in as efficient a manner as possible by using materials from the proceeding held before the ITC, a basic principle must be recognized—this civil action is independent from the ITC proceeding and the rules governing the scope of civil actions in the federal courts are the appropriate guideposts here. It was for this reason that this Court allowed additional parties to be added to this proceeding, and it is for this reason that Magistrate Judge Kay's Order must be affirmed.

To the extent that Thomson argues that Innovatron is estopped from seeking discovery about the two new products or has waived its right to do so by virtue of its counsel's comments at the initial scheduling conference identifying the commonalities between this lawsuit and the ITC proceeding, that argument is unpersuasive. At the scheduling conference, this Court did not understand Innovatron to be stipulating to a replay of the ITC proceeding and Magistrate Judge Kay was correct not to so interpret Innovatron's counsel's representations.

### 3. *Motion to Set "Ground Rules" for Markman hearing*

With respect to Thomson's motion to set "ground rules" for the *Markman* hearing by

excluding "extrinsic" evidence, at least initially, the Court is not persuaded that any efficiencies are to be gained by the proposal.

Construction of patent claims is akin to interpretation of foreign law. *Cf. Yarway Corp. v. Eur–Control USA Inc.*, 775 F.2d 268, 274 (Fed.Cir.1985). In both cases, the court is presented with a question of law. *Compare Markman v. Westview Instruments*, 517 U.S. 370, 116 S.Ct. 1384, 1387, 134 L.Ed.2d 577 (1996) (hereafter *Markman II) with* FED.R.CIV.P. 44.1. But these two types of questions of law are distinct from routine questions of law. Normally:

> In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge. Accordingly, expert testimony on such purely legal issues is rarely admissible.

*Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 99 (1st Cir.1997). It is true that in construing statutes courts routinely look beyond the text to external sources such as legislative history, but doing so is not considered reliance on "evidence" but on interpretive aids. *See generally* Nicholas S. Zeppos, *Legislative History and Interpretation of Statutes: Towards a Fact Finding Model of Statutory Interpretation*, 76 VA.L.REV. 1295 (1990).

One well-recognized exception to the bar on expert testimony for questions of law is for questions of foreign law. *Nieves–Villanueva*, 133 F.3d at 99. When answering a question of foreign law, a federal court is authorized to look to a host of sources, including evidence in the form of expert testimony. FED.R.CIV.P. 44. 1. Another exception is patent claim construction, for which federal courts also are authorized to receive expert testimony. *Markman II*, 116 S.Ct. at 1395–95 ("The testimony of witnesses may be received.... But in the actual interpretation of the patent the court proceeds upon its own responsibility, as an arbiter of the law, giving to the patent its true and final character and force."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996).

The difference is that in questions of foreign law, no express hierarchy of sources has been established. *See* FED.R.CIV.P. 44. 1. By contrast, in claim construction a court is to first consider "intrinsic" evidence and then, only if an ambiguity remains, should the court consider "extrinsic" evidence. *Vitronics*, 90 F.3d at 1582–83. The reason is that the "intrinsic" evidence consists of matters of public record on which third parties are entitled to rely when interpreting for themselves the scope of a specific patent or its subsidiary claims. *Id.* at 1583.

While the preference for intrinsic evidence is strong, Thomson's proposal to put extrinsic evidence on "hold" goes too far. Thomson's motion is in essence a type of motion in limine that is inconsistent with the view that claim construction is a matter of law. It is up to the parties to present whatever argument and evidence they believe will be helpful to the task of claim construction. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457 (Fed.Cir.1998) (en banc) (extrinsic evidence is "an aid to the court in coming to a correct conclusion as to the true meaning of the language employed in the patent.").

The Court may ultimately decide that after consideration of "intrinsic evidence" the claims are unambiguous, and if so, will disregard any extrinsic evidence presented. But the Court would prefer to receive the full presentation in one hearing, and it will be up to the parties to allocate their presentation between intrinsic and extrinsic evidence. *See Cybor*, 138 F.3d at 1475 (Newman, J., dissenting).

Limiting the *Markman* hearing to "intrinsic" evidence would be problematic for two reasons. First, expert testimony in the claim construction context, although technically "evidence," often is a mix of legal argument and "fact" testimony. The line between the two often is hardly iridescent, in fact it can be quite dim. Second, as a matter of judicial economy, because the Federal Circuit will review claim construction determinations *de novo,* it is more efficient to develop the full record at one time. If the Court were to adopt Thomson's proposal and re-

ceive only "intrinsic" evidence at the *Markman* hearing, consider the following scenario:

Assume for this example only that this Court, after receiving only intrinsic evidence, decides that the claims are unambiguous and proceeds to announce the meaning of the patent without receiving extrinsic evidence. Assume further that a trial is held on the basis of that interpretation. If one of the parties were then to appeal on the issue of claim construction, the Federal Circuit may disagree with the construction and determine that even after consideration of intrinsic evidence the claims are ambiguous. Without any extrinsic evidence in the record to aid interpretation, that court would then be forced to choose between holding an additional *Markman* hearing itself to receive extrinsic evidence—which in theory it could do to decide an issue of pure law—or, more likely, remand for a second *Markman* hearing and trial on liability.

Should the Federal Circuit choose to proceed in the latter fashion, a risk would arise that, after receiving extrinsic evidence, this Court could again construe the patent only to learn upon a subsequent appeal that the patent had a different meaning, which would require a third trial on liability. That risk can be eliminated by development of a full record at this stage. The price of an extra day of hearing is a small one to pay to extinguish the risk of a third trial.

At the *Markman* hearing, the question before the Court is how to construe the disputed claims. No "ground rules" are necessary. Each party will have to evaluate the *Vitronics* hierarchy of sources and present its respective case with an eye to those constraints as it best sees fit.

Accordingly, it is hereby

**ORDERED** that Thomson's Motion to Clarify and Establish Ground Rules for the Markman Hearing is DENIED; and it is

**FURTHER ORDERED** that Thomson's Motion for Expedited Briefing is DENIED as moot; and it is

**FURTHER ORDERED** that Innovatron's Motion for Sanctions is DENIED; and it is

**FURTHER ORDERED** that Thomson's Appeal from Magistrate Judge Kay's Discovery Order is DENIED.

IT IS SO ORDERED.[1]

---

1. A copy of this Order has been sent this date by facsimile to counsel of record.