Joromi H. BAZUAYE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. Civ.A. 93–1767 (JHG).

United States District Court, District of Columbia.

March 22, 1999.

Joromi H. Bazuaye, New York City, pro se.

Mary Lou Leary, U.S. Attorney's Office, Washington, DC, Nancy R. Page, U.S. Attorney's Office, Civil Division, Washington, DC, for U.S.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

On remand, the only remaining issue in this case is whether plaintiff Joromi H. Bazuaye ("Bazuaye") is entitled to a trial on his claim that a Postal Inspector's "seizure" of $11,000 from him was wrongful and amounted to the tort of conversion.

It is undisputed that a Postal Inspector obtained the $11,000 from a bailbondsman to whom Bazuaye had entrusted it. After obtaining the funds, the Postal Service commenced administrative forfeiture proceedings. Bazuaye received notice of these proceedings but chose not to contest them in a timely fashion. The Postal Service declared the $11,000 forfeited to the United States. Bazuaye filed this suit.

For the reasons stated below, the Court finds that although the declaration of forfeiture did not deprive Bazuaye of his claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, concerning how the United States took possession of the funds, the unique aspects of forfeiture law operate to establish as a fact that Bazuaye had no right to possess the money at the time of the "seizure." As a result, by operation of law, Bazuaye is unable to prove a fact necessary to his conversion claim. Judgment must be entered in favor of the United States.

## BACKGROUND

The lengthy history of this dispute has been recounted in a number of prior opinions. *See* Order of May 12, 1998 ("May 1998 Order"); Memorandum Opinion of Mar. 30, 1998 ("Mar.1998 Op." or "the March 1998 Opinion"); Memorandum Opinion of June 11, 1997 ("June 1997 Op." or "the June 1997 Opinion"); *Bazuaye v. United States*, 83 F.3d 482 (D.C.Cir.1996); Order of Feb. 2, 1995 ("Feb.1995 Or." or "the February 1995 Order").

Summarized here are the following relevant facts. On October 16, 1991, Secret Service agents arrested Bazuaye in Washington, D.C., for engaging in a scheme of credit card fraud. On October 17, 1991, a criminal complaint was filed against Bazuaye in the United States District Court for the Eastern District of Virginia, alleging a violation of 18 U.S.C. § 1029.

To secure his pretrial release, Bazuaye alleges that he arranged for his relatives and friends to provide $11,000 "for the purpose of using the money to help in his criminal defense," and that he decided to use this money to post his bail bond and to obtain counsel of his choice. June 1997 Op. at 2. The $11,000 consisted of cash, Western Union money transfers, and postal money orders.

The Government opposed Bazuaye's bond request, arguing that the $11,000 did not derive from a legitimate source. On November 1 and 7, 1991, Bazuaye attended a hearing held pursuant to *United States v. Nebbia*, 357 F.2d 303 (2d Cir.1966), before Magistrate Judge Sewell to determine the legitimacy and source of the money for Bazuaye's bond. Bazuaye alleges that on November 6, 1991, the day before the *Nebbia* hearing resumed, U.S. Postal Inspector Glenn Clark ("Clark") unlawfully seized the $11,000 from the bondsman,

Mardis M. Mitchell ("Mitchell") to whom Bazuaye had entrusted it. On November 7, 1991, Magistrate Judge Sewell denied, from the bench, Bazuaye's request to use the money for a bail bond:

> Defendant [Bazuaye] has caused proposed bond collateral and monies to be used for bond collateral to be presented falsely and for the purpose of misleading the Court as to the sources of these monies. Specifically, the Western Union transfers of money originating in New York, Brooklyn, New York, where the purchaser was alleged to be a person who did not purchase those—or did not pay for those transfers of funds.

Hearing Transcript at 156, *United States v. Jeromi*[1] *Bazuaye*, Crim. No. 91–1305–M (E.D.Va., Nov. 7, 1991).

In February 1992, Bazuaye pled guilty to one count of credit card fraud, i.e., possessing, with the intent to defraud, 15 or more counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3). He was sentenced to 37 months' incarceration. *See United States v. Bazuaye*, 991 F.2d 791 (4th Cir.1993) (Table) (unpublished op. at 1993 WL 102576).

During the same time period that Bazuaye was convicted pursuant to his plea, the Postal Service initiated procedures to administratively forfeit the $11,000 that was seized and was the subject of the *Nebbia* Hearing in November 1991. On January 13, 1992, the Postal Service found probable cause to forfeit the funds. Bazuaye received personal notice of the forfeiture proceeding on February 10, 1992. *See* Def.'s Further Mot. for Summ.J. Ex. C. A timely petition for mitigation of forfeiture was filed on behalf of Edwin Obazuaye, one of the relatives alleged to have contributed to the $11,000.[2] That petition

---

**1.** It is not clear whether this is an alias used by Bazuaye or whether the caption in that case contains a typographical error as to the spelling of his name.

**2.** Bazuaye alleges that *he* sought remission, and that the Postal Service construed the request as coming from Edwin Obazuaye. *See* Pl.'s Reply to Def.'s Response to May 12, 1998 Order at 2–3. *But see* Def.'s Further Mot. for

was denied. At no time during its pendency did Bazuaye challenge the forfeiture in the administrative proceeding, and the funds were declared administratively forfeited on May 6, 1993. On May 10, 1993, the Postal Service received a challenge from Bazuaye, which was denied as untimely.

On May 15, 1993, Bazuaye filed a Standard Form ("SF") 95 claiming damages of $14,200 arising from the seizure of the $11,000. This claim was denied by the Department of Justice on July 6, 1993. Bazuaye then filed the instant suit. In February 1995, the Court rendered judgment on all claims in favor of the United States. Bazuaye appealed only the dismissal of his FTCA claim that the postal inspector unlawfully seized the $11,000.. This issue was one of first impression in this Circuit. See Schreiber v. United States, 1997 WL 563338, at *5 (S.D.N.Y. Sept. 8, 1997) (describing circuit split). This Court held that Clark's actions fell within the law enforcement exception to the FTCA. The Court of Appeals disagreed. See Bazuaye v. United States, 83 F.3d 482, 486–87 (D.C.Cir.1996). But; cf. United States v. Espy, 145 F.3d 1369, 1370–72 (D.C.Cir.1998).

On appeal, the Government also challenged, for the first time, this Court's jurisdiction over Bazuaye's FTCA claim, relying on United States v. Price, 914 F.2d 1507, 1511 (D.C.Cir.1990).[3] The Bazuaye Court distinguished Price on the ground that Bazuaye's FTCA claim was not for return of the $11,000 but for damages resulting from the allegedly wrongful conversion of that sum.[4] This case was remanded with the following instructions:

That is not to say that Bazuaye's damages claim is a cognizable one under the FTCA. We do not reach that question here. Rather we hold only that neither Price nor § 2680(c) precludes Bazuaye from pursuing his FTCA claim, and we remand this case to the district court so that he may make the attempt.

Bazuaye, 83 F.3d at 487.

▮▮▮▮ This Court then set a briefing schedule, see Order of Sept. 25, 1996, and the United States later renewed its motion to dismiss, or in the alternative, for summary judgment. The June 1997 Opinion resolved that motion, leaving only the very narrow issue of whether Clark's seizure of the $11,000 was a conversion of Bazuaye's alleged right to possess those funds. Cross motions for summary judgment were filed and were denied in the March 1998 Opinion. However, after the Court reviewed the parties' respective pretrial statements, and reflected further on the merits, it appeared that judgment as a

Summ.J. Ex. E (Bazuaye's May 2, 1993 Aff. of Poverty).

3. In Price, the Court of Appeals held:

[O]nce the Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction [under Fed.R.Crim.P. 41(e)] to resolve the issue of return of property. In this case, Price's remedy was to challenge forfeiture in the administrative proceeding. His failure to do so did not confer continuing jurisdiction on the District Court.

914 F.2d at 1511.

4. The Government continues to reargue this point. Because the res was money, a fungible commodity, Bazuaye's damages claim appears to be seeking exactly that which was forfeited. However, conceptually there is a difference. A simpler way to understand the point is to imagine that Bazuaye had a right to possess an automobile owned by another. If the Government wrongfully seized that automobile, Bazuaye could not seek return of the car in an FTCA action but he could seek money damages for the loss of the automobile's use.

This example answers the Government's alternative argument that Bazuaye can prove no damages because only the holder of title may claim interest. If Bazuaye had a possessory right to the funds for 18 months, he could have deposited them in the bank and collected interest. Whether he had a right to keep that interest depends upon the terms of his alleged agreement with the owners of the funds. Bazuaye would have to prove that he had a right to such interest. Interest is used as the only non-speculative measure of damages.

matter of law may have been warranted after all.[5] The Government's renewed motion for judgment is pending and is granted herein.

## DISCUSSION

Under the FTCA, the United States has agreed to be liable in tort "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). It has long been understood that the "law of the place" is the law of the State where the conduct occurred, and thus, as a matter of federal law, state law supplies the rule of decision in FTCA cases. Postal Inspector Clark obtained the $11,000 in Virginia, and it is that law that governs Bazuaye's FTCA claim for conversion.

This Court has previously explained:

Liability for conversion may arise where there is an unlawful interference with the right to immediate possession of property, including money. *See Curaflex Health Serv. Inc. v. Bruni,* 877 F.Supp. 30, 32 (D.D.C.1995); 7 SPEISER, KRAUSE & GANS, THE AMERICAN LAW OF TORTS § 24:6 (1990). A claim for conversion is not defeated by non-ownership if the plaintiff has an immediate right to possession. *See Curaflex,* 877 F.Supp. at 32; RESTATEMENT (SECOND) OF TORTS § 224A & cmt. b (1965); *id.* § 225 & cmts. b & d; PROSSER & KEETON ON TORTS § 15, at 103 (5th ed.1984); 7 SPEISER, KRAUSE & GANS, *supra* § 24:11. *See gen-*erally Warren, *Qualifying as Plaintiff in an Action for a Conversion,* 49 HARV. L.REV. 1084 (1936). The normal measure of damages is "the full value [of what] he was entitled to ... at the time of the conversion," PROSSER & KEETON, *supra* § 15, at 105, and damages may include interest. *See* 7 SPEISER, KRAUSE & GANS, *supra* § 24:12.

June 1997 Op. at 15–16.

The Government has steadfastly maintained that no trial is necessary because once the administrative forfeiture became final, by operation of law, title to the $11,000 vested in the United States. The Court previously ruled that the final declaration of forfeiture served to cut off any right of possession Bazuaye may have had as of the date the forfeiture became final. This was because Bazuaye had failed to mitigate his damages by contesting the forfeiture. *Cf. Beins v. United States,* 695 F.2d 591, 599–600 (D.C.Cir.1982). The Court's ruling left open the question of whether Bazuaye had a right to possess the funds at the time of seizure. The Government contended then, and does so again, that, by operation of law, its title relates back to the time Bazuaye committed the acts making the $11,000 subject to forfeiture—a time that predates the seizure.

Although the Government has not phrased this argument in terms of issue preclusion or collateral estoppel, that is how the argument functions.[6] According to the Government, Bazuaye must live with the consequences of choosing not to con-

---

5. The parties were directed to respond to a narrow set of questions concerning the potentially preclusive effect of the concluded administrative forfeiture proceedings. Had Bazuaye challenged the forfeiture, he could have litigated whether Clark had probable cause to seize the funds. The May 1998 Order asked whether Bazuaye's decision not to challenge the forfeiture precluded him from litigating the issue of Clark's probable cause in this suit. The Court has concluded that Bazuaye is not precluded from litigating that issue.

However, the preclusion analysis leads to the conclusion that Bazuaye is precluded from litigating a different issue: whether he had a property interest in the $11,000 on the date of seizure. That issue has already been decided in the forfeiture proceeding and Bazuaye is estopped from asserting such an interest in support of his FTCA claim.

6. Bazuaye's argument that issue preclusion was not properly pled is unavailing. Both sides have introduced preclusion analysis into the case, directed primarily at the effect of the *Nebbia* hearing. *Cf. Wilkinson v. Legal Services Corp.,* 80 F.3d 535, 539 (D.C.Cir.1996).

test the forfeiture in a timely fashion. The final declaration of forfeiture established that on the date of seizure, the United States held title to the $11,000. Therefore, Bazuaye's FTCA claim fails because he is estopped from asserting that he had a property interest in the $11,000 on the date of seizure. The Court agrees. Either the forfeiture statute compels this result, or, if it does not, traditional judicial principles of collateral estoppel do.

## A. Forfeiture Proceedings

To understand the Government's argument, some background is in order. The Government's forfeiture of the $11,000 in this case proceeded according to the terms of the Tariff Act of 1930. *See generally* 19 U.S.C. § 1600 *et seq.* Congress established these procedures to ease the burden of judicial civil forfeitures. *See Small v. United States,* 136 F.3d 1334, 1335 (D.C.Cir.1998) (Administrative forfeiture is a device "that permits the United States to determine whether property in its custody is unclaimed, and, if it is, to take ownership without the trouble and expense of court proceedings."). By its terms, the Tariff Act applies to seizures by customs officials, but Congress has made these administrative forfeiture proceedings applicable in a number of other contexts, including seizures by Postal Inspectors. *E.g.* 18 U.S.C. § 981; 21 U.S.C. § 881(d).

Under these procedures, notice is to be given to those with an interest in the property, 19 U.S.C. § 1607(a), and such persons have twenty days to file a claim to the property. *Id.* § 1608. If a claim is filed, the administrative process halts. The United States may either return the property to the claimant or initiate civil forfeiture proceedings in court. *Small,* 136 F.3d at 1335. A civil forfeiture proceeding is *in rem,* with the property as defendant accused of being tainted by use in illegal activity. Claimants to the property generally contest the Government's assertion either by arguing that the property had no nexus to crime or that they are innocent owners whose title should not be defeated by the property's criminal past.[7]

In a case where no claimant has contested the administrative proceeding in a timely fashion the property is declared as forfeited to the United States. 19 U.S.C. § 1609(a). The effect of such an administrative declaration is as follows:

> A declaration of forfeiture under this section shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States. Title shall be deemed to vest in the United States free and clear of any liens or encumbrances ... from the date of the act for which the forfeiture was incurred.

19 U.S.C. § 1609(b).

## B. Section 1609(b) Precludes Litigation of Bazuaye's Claim to a Right of Possession in the $11,000.

■ The second sentence of § 1609(b) codifies the common law "relation back" doctrine. *See, e.g., United States v. 92 Buena Vista Avenue,* 507 U.S. 111, 119–22, 129, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993); *First American Corp. v. Al–Nahyan,* 17 F.Supp.2d 10, 20–21 (D.D.C.1998); *see also Gelston v. Hoyt,* 3 Wheat. 246, 16 U.S. 246, 318, 4 L.Ed. 381 (1818). The Government is unable to approximate a date for Bazuaye's wrongful conduct concerning the $11,000, but, it argues, such conduct must have been prior to the date of seizure. Consequently, once the forfeiture became final, the United States's title

---

7. If the property is found to have a nexus to illegal activity and no claimant is an innocent owner, the United States takes title *nunc pro tunc* to the time at which the wrongful act was committed. If the property is acquitted or judgment is entered in favor of a claimant, the property is returned to the claimant. If the court finds that the officer who seized the property did so with reasonable cause, the court is to issue a certificate to that effect, which immunizes the seizing officer from liability to "suit or judgment on account of such suit or prosecution." *See* 28 U.S.C. § 2465.

relates back to that pre-seizure date, and Bazuaye cannot be heard to claim in his FTCA suit that he had a right to possess the money on the date of "seizure."

As to title to the res, it is clear that the relation-back doctrine operates and Bazuaye cannot challenge the Government's right to the money itself. *See, e.g., Seber v. Unger,* 881 F.Supp. 323, 327–28 (N.D.Ill. 1995). The question here is whether Congress intended that determination under § 1609(b) to estop a potential claimant from arguing in a subsequent tort action that he had a right of possession at the time of seizure. The Court concludes that it does.

The statute declares that "[t]itle shall be deemed to vest in the United States free and clear of any liens or encumbrances ... from the date of the act for which the forfeiture was incurred." 19 U.S.C. § 1609(b). Congress did not expressly limit the circumstances under which title "shall be deemed to vest in the United States," and the Court finds no basis for implying such a limitation. On the contrary, while a tort claim for wrongful seizure does not specifically act as a "lien or encumbrance" on the property, it appears from the text that Congress intended the vesting of title in the United States to bar any claim that requires a contrary understanding of ownership. See Comprehensive Forfeiture Act of 1983, S.Rep. 98–225, *reprinted in* 1984 U.S.C.C.A.N. 3182; *cf. Gelston,* 16 U.S. at 318 ("If [property] is condemned, the title of the property is completely changed, and the new title acquired by the forfeiture travels with the thing in all its future progress."). The Court holds that § 1609(b) bars Bazuaye from asserting that he had a property right in the $11,000 on November 6, 1991. *Cf. Counihan v. Allstate Ins. Co.,* 25 F.3d

109, 113 (2d Cir.1994) (relation back did not deprive claimant of claim to an insurable interest in forfeited property only because the order of forfeiture had not become final at the time the claim accrued).

## C. Even Under Judicial Principles of Issue Preclusion Bazuaye Is Estopped From Asserting a Property Interest in the $11,000.

Even if Congress intended the preclusive "force and effect" of an administratively final declaration of forfeiture to be measured by judicial principles of issue preclusion, the result is the same. The judicial doctrine of collateral estoppel or issue preclusion establishes the criteria for determining whether an issue that has been once litigated and decided may be relitigated in a subsequent proceeding.[8]

In the forfeiture proceeding, the Government had the initial burden of demonstrating probable cause that the $11,000 derived from illegal sources. *See* 19 U.S.C. § 1615. A finding of probable cause was entered on January 13, 1992. Under the statute, the burden shifts to potential claimants to establish a superior right to the property. *Id.* In this case, no claimant successfully established a right to the $11,000. Thus, by operation of § 1609(b), the factual determination of probable cause led also to the factual determination that title to the $11,000 vested in the United States at a time prior to November 6, 1991—the date of seizure. The issue of ownership of the $11,000 on the date of seizure has already been determined, and the Court finds that the judicial criteria for giving the administrative declaration of forfeiture preclusive effect are satisfied. Thus, Bazuaye is collaterally estopped from asserting in this case that

---

8. To conserve judicial resources and avoid the inconsistent results that can flow from relitigation of the same claims or issues, courts at common law developed the doctrines of res judicata and collateral estoppel. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Res judicata or claim preclusion bars a subsequent litigation of the same claims by the same parties. Collateral estoppel or issue preclusion bars subsequent litigation of factual issues even if those issues pertain to different claims in the subsequent litigation.

*he* had a property right in the $11,000 on the date of seizure.

To explain this result, it is first necessary to determine which judicial principles of preclusion doctrine apply—federal or State. Traditionally, the doctrine of collateral estoppel would be applied only to a judgment made by another court and only if: (1) the issue to be precluded was identical to that decided in the former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding was final and on the merits; and (5) the parties or their privies in the subsequent litigation were the same as in the former proceeding [hereafter "mutuality"]. *See, e.g., Southern Pacific R. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897); RESTATEMENT OF JUDGMENTS § 68 (1942).

Over time these requirements have been liberalized to varying degrees in the States and in the federal courts. Some exploration of these differences is necessary here. On the surface it appears that a different result follows depending on whether the FTCA requires the Court to apply federal or Virginia preclusion law. However, ultimately, the Court concludes that in either case Bazuaye is precluded from relitigating a fact necessary to his conversion claim.

### 1. Whether the FTCA Incorporates State Preclusion Law

■ The FTCA directs not only that state law supply the rule of decision, but it also "requires application of the whole law of the State where the act or omission occurred." *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) (concluding that state-law choice-of-law rules apply in FTCA actions). The circuits are split as to whether the "whole law" includes the rules governing collateral estoppel (issue preclusion) and res judicata (claim preclusion).

The majority have applied state law collateral estoppel rules. *See Bowen v. United States,* 570 F.2d 1311, 1319 (7th Cir. 1978) (applying state law to measure preclusive effect of prior federal administrative decision); *Filice v. United States,* 271 F.2d 782, 783 (9th Cir.1959) [9]; *D'Ambra v. United States,* 396 F.Supp. 1180, 1181 (D.R.I.1973), *aff'd* 518 F.2d 275 (1st Cir. 1975). However, in each of these cases the decision to use state law appeared not to be dispositive either because state and federal law did not conflict or because state law was unclear. *See* Jean F. Rydstrom, Annotation, *Federal or state law as governing in matters of res judicata and collateral estoppel in Federal Tort Claims Act suit,* 49 A.L.R.FED. 326 (1980 & Supp.). In the one case where federal and state law were in conflict, the Government argued that state law should apply, but the court rejected that argument and held that collateral estoppel was a "procedural" issue to which federal law applied. *See Johnson v. United States,* 576 F.2d 606, 612 (5th Cir.1978); *see also* 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4466 at 622 (1981) [hereafter WRIGHT, MILLER & COPPER] (describing *Johnson* as "very persuasive").[10]

9. The Ninth Circuit also followed this holding in a 1988 unpublished case.

10. *Johnson* involved a psychologically-troubled serviceman who had been allowed to visit his estranged wife by a military psychologist. The serviceman was armed, and he wounded his wife and killed her brother, with whom she was staying. The wife and the brother's widow brought separate FTCA actions alleging that the United States had been at fault in allowing the visit. The brother's widow's action was resolved first, resulting in a judgment in her favor. In the wife's action, the District Court held that the preclusion principles of the State supplying the rule of decision applied in an FTCA action. Georgia law supplied the rule of decision in *Johnson,* and under Georgia law, collateral estoppel required mutuality of parties. That being lacking, the District Court found in favor of the United States. The Fifth Circuit reversed, holding that federal preclusion law, which does not require mutuality, applied in a sub-

The *Johnson* analysis turns on a distinction between substantive rules, which would be part of a State's "whole law" made applicable in an FTCA action, and procedural rules, which derive from the court hearing the case. As in many other contexts, the substance/procedure distinction is an uneasy one under the FTCA, but ultimately this Court finds it to be appropriate.

Conceptually, the preclusive effect of a judgment can be seen to derive from one of three sources. First, it may derive from the tribunal that renders the first judgment. The act of rendering judgment can be seen also as a statement as to who is bound by the judgment. This conception, however, can lead to arbitrary results. Where two parties have a dispute over which federal and State courts have concurrent jurisdiction, and the State courts retain the mutuality requirement while the federal courts do not, the preclusive effect of the judgment in which the same law was applied to the same facts will depend solely on which court rendered judgment. Nonetheless, Congress has adopted this view concerning the effect of judgments rendered by State courts. *See* 28 U.S.C. § 1738; *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986).[11]

Second, preclusion can be seen as a substantive component of the law that supplies the rule of decision underlying a judgment. On this view, where the prior judgment was rendered under state law, whether by a State or federal court, state preclusion doctrine governs the effect of the judgment. Some authorities adopt this view. *See, e.g., Ellis v. Ford Motor Co.*, 628 F.Supp. 849, 854 (D.Mass.1986) ("It is well settled that these doctrines [i.e., res judicata and collateral estoppel] are substantive in nature. . . .").

Finally, preclusion doctrine can be seen as a rule of evidence or a procedural device. *E.g.*, RESTATEMENT (SECOND) OF JUDGMENTS intro. at 5 (1982) ("The law of res judicata dealt with in this Restatement is a subcategory of the law governing procedure in civil actions."). As most tribunals retain the prerogative to apply their own procedures even when another source of law supplies the rule of decision, the successor tribunal would apply its preclusion rules to a prior judgment, regardless of what tribunal rendered it.

Given the multitude of situations in which preclusion questions arise, it should come as no surprise that no single conception of preclusion has been adopted.[12] In

---

sequent FTCA action. *Johnson*, 576 F.2d at 612.

**11.** Section 1738 requires that federal courts give the same preclusive effect to a prior judgment of a State court as the courts of that State would. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). If federal law would require the State courts to apply federal preclusion law to any judgment made on a question of federal law, even if made by a State court, then § 1738 would be in accord with a substantive view of preclusion. However, that view is not universally shared, as is discussed *infra*.

**12.** For example, no clear statutory provision requires that federal judgments be given the same preclusive effect in State courts as they would in federal court. *See* WRIGHT, MILLER & COOPER § 4466. Yet some decisions have announced unequivocally a substantive view under which federal preclusion law governs the

effect of federal judgments rendered on federal questions. *See Nutter v. Monongahela Power Co.*, 4 F.3d 319, 321–22 (4th Cir.1993) ("Federal law determines the preclusive effect of federal orders on a question of federal law, regardless of whether the court applying the federal judgment is state or federal."); *see also Hagen v. Utah*, 510 U.S. 399, 409, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994); *cf. Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, ——, 118 S.Ct. 921, 925–26, 139 L.Ed.2d 912 (1998) (claim of res judicata effect of prior federal judgment in State court is a federal defense). The majority of authorities support this view. *See, e.g.,* Romualdo P. Eclavea, Annotation, *State or federal law as governing applicability of doctrine of res judicata or collateral estoppel in federal court action*, 19 A.L.R.FED. 709 § 3[b] (1974 & Supp.) (collecting cases). But the issue is not entirely settled. *See Kopp v. Fair Political Practices Comm'n*, 11 Cal.4th 607, 47 Cal.Rptr.2d 108, 114–15, 905 P.2d 1248 (1995) (applying Cali-

the FTCA context this Court concludes that the *Johnson* court's procedural view of preclusion doctrine is correct. No persuasive reason suggests that Congress's incorporation of state law in the FTCA was intended to displace the generally held view—on either substantive or procedural grounds—that a federal court will apply federal preclusion doctrine to measure the preclusive effect of a prior federal judgment. Moreover, even if Congress intended to sweep in preclusion doctrine as part of the "whole law" incorporated in the FTCA, in this case, under Virginia preclusion law, the result would be the same.

## 2. Preclusion Analysis

Under the federal preclusion law of this Circuit:

Three conditions must be satisfied before a party can be estopped from relitigating an identical issue previously decided:

(1) The issue must have been actually litigated, that is contested by the parties and submitted for determination by the court.

fornia's "public interest" exception to preclusion to prior federal judgment); *see also* CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER § 4468 at 524 (1998 Supp.) (approving result in *Kopp* ); *cf. American Family Life Assurance Co. v. Federal Communications Comm'n*, 129 F.3d 625, 629 (D.C.Cir. 1997) (suggesting that state court could apply its preclusion rules to federal administrative order).

Where the prior federal judgment was rendered in diversity jurisdiction the results become even more mixed. For example, in *Dual & Associates, Inc. v. Wells*, the Virginia Supreme Court adopted a procedural view of preclusion doctrine by applying the Virginia mutuality requirement when determining the preclusive effect of a prior federal court judgment on what appear to have been state-law claims. 241 Va. 542, 403 S.E.2d 354, 356 (1991) (arguably *dictum* ).

**13.** Absent from these requirements is the traditional mutuality element, which is no longer required under the federal law of issue pre-

(2) The issue must have been actually and necessarily determined by a court of competent jurisdiction in the first trial. (3) [P]reclusion in the second trial must not work an unfairness.

*Milton S. Kronheim & Co., v. District of Columbia*, 91 F.3d 193, 197 (D.C.Cir.1996) (quotations and citations omitted).[13]

### a. Whether the Final Declaration of Forfeiture Is Entitled to Preclusive Effect

■ A "court of competent jurisdiction" for preclusion purposes includes an administrative agency, so long as the agency was acting in a judicial capacity and its procedures afforded a sufficient opportunity to "actually litigate" the issue for which estoppel is sought. *See Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); *Nasem v. Brown*, 595 F.2d 801, 806 (D.C.Cir.1979).[14] Although Virginia law is less clear, it appears to be in accord. *See Jackson v. W.*, 14 Va.App. 391, 419 S.E.2d 385, 396 n. 15 (1992) (leaving open the preclusive effect of agency determination); *cf. Petrus v. Robbins*, 196 Va. 322, 83 S.E.2d 408, 412 (1954) ("A plea of res adjudicata or estoppel of record may be

clusion. *See Blonder–Tongue Laboratories, Inc. v. University of Illinois Found.*, 402 U.S. 313, 349–50, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). However, some States, including Virginia, have maintained the mutuality requirement. *See TransDulles Ctr. Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274, 275 (1996).

If Virginia law were to apply in this case, some question might arise as to whether the *in rem* forfeiture proceeding would be given effect, since Bazuaye was not named as a "party." However, Bazuaye's alleged property interest in the $11,000 likely would have made him a privy of the $11,000 for purposes of preclusion analysis.

**14.** Congress, of course, may override this application of the doctrine. *See Thomson Consumer Electronics, Inc. v. Innovatron, S.A.*, 3 F.Supp.2d 49, 51 (D.D.C.1998) (holding that, by statute, patent infringement determination made by International Trade Commission does not bar parallel infringement action between the same parties in federal district court).

successfully invoked upon a final judgment or decree of a court of inferior or limited jurisdiction . . . .").

Moreover, 19 U.S.C. § 1609(b) commands that a final declaration of forfeiture be given the "force and effect" of a judicial forfeiture. Even if that section does not decide the issue, as has been held above, the "force and effect" must extend to giving the administrative declaration the same preclusive effect as a judicial order.

### b. Whether the Issue To Be Litigated Is Identical

The issue of title to the $11,000 is identical. Although Bazuaye has never contended that the money was his—at least not in this case—his claim to a possessory interest depends on his assertion of fact that title to the money resides with certain friends and relatives. The United States took a contrary view in the forfeiture proceeding and does so here. The issue is identical for purposes of both federal or Virginia law.

### c. Whether the Issue Was Actually Litigated

■ There is some variance in the decisions as to whether an issue must itself be "actually litigated" to be given preclusive effect or whether there must have been a full and fair *opportunity* to litigate an issue and the issue was "actually determined" by the first judgment. *See, e.g., Whelan v. Abell,* 48 F.3d 1247, 1255–56 (D.C.Cir.1995). *But cf. Haring v. Prosise,* 462 U.S. 306, 315 n. 9, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (noting that under

both federal and Virginia law, res judicata bars issues that could have been raised, but collateral estoppel does not); Restatement (Second) of Judgments § 27 cmt. e (same).

In this case, pursuant to the statutory scheme, the administrative forfeiture of the $11,000 occurred by default. *See United States v. Baird,* 63 F.3d 1213, 1217 (3d Cir.1995). Bazuaye could have filed a claim requiring that the issues be litigated in a civil forfeiture proceeding in district court. Had he done so, he would have had a full and fair opportunity to litigate both the issue of title to the $11,000 and whether Clark had probable cause to seize the funds. *Cf. Matthews v. United States,* 917 F.Supp. 1090, 1106 (E.D.Va.1996) (claimant "had every opportunity to follow proper procedures prior to the forfeitures in order to halt the administrative forfeiture process."). He chose not to avail himself of that opportunity.[15] The declaration of forfeiture actually determined the title issue, but the same cannot be said of Clark's probable cause to seize the funds.[16]

In some respects, the declaration of forfeiture is like a default judgment. A default judgment is a judgment on the merits as to those facts necessary to the judgment. An emerging difference between some States and the federal courts, is the preclusive treatment of default judgments. Federal decisions, adopting the Restatement position, have refused to give default judgments preclusive effect on the grounds that none of the issues were "actually liti-

---

**15.** Were the Court to accept Bazuaye's representation that the petition filed on behalf of Edwin Obazuaye was in fact submitted on Bazuaye's behalf, it would be clear that Bazuaye participated in the forfeiture proceeding and had every opportunity and incentive to fully litigate his interest in the money. In that case as well he would be estopped from relitigating the issue of title. *See* Restatement (Second) of Judgments § 30 & cmt. d.

**16.** The decree of forfeiture determined that the United States had probable cause to forfeit the property, *see* 19 U.S.C. § 1615, but

this issue is distinct from whether the seizing officer had probable cause at the time of seizure. *See United States v. "Monkey",* 725 F.2d 1007, 1011 (5th Cir.1984). While the forfeiture in this case did not conclusively determine whether Clark had probable cause to seize the $11,000, assuming there was a seizure, if the undisputed evidence establishes probable cause, Bazuaye's conversion claim is defeated. *See Hammel v. Little,* 87 F.2d 907, 912 (D.C.Cir.1936); *Wright v. United States,* 963 F.Supp. 7, 19 (D.D.C.1997).

gated."[17] The exception to this position has been where a party participates in the case up to a point and then takes action, such as committing discovery violations, that leads to entry of a default judgment. Under those conditions, federal courts have given default judgments preclusive effect. *See Bush v. Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319, 1325 (11th Cir. 1995); *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir.1995); *cf. In re Ansari*, 113 F.3d 17, 21–22 (4th Cir.1997).

Here, although federal preclusion law would appear to deny preclusive effect to the administrative forfeiture, two features change the result. First, § 1609(b)'s admonition that a final administrative declaration is to be given the "force and effect" of a judicial forfeiture—which would have arisen only if a claimant had actually litigated the ownership issue—acts to trump the general federal preclusion law on default judgments. Second, even if § 1609(b) meant only that an administrative forfeiture should be given the "force and effect" that federal preclusion law would give to a default judgment, preclusion would still be appropriate as to the issue of title.

Federal treatment of forfeiture orders has long recognized that because such an order is binding on the *res* all those with a putative interest in the *res* are in privity and are bound by a judgment of forfeiture insofar as their interest in the *res* is concerned. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 30 ("A valid and final judg-

ment in an action based only on jurisdiction to determine interests in a thing: (1) Is conclusive as to those interests with regard to all persons . . . ."). As to any other issues raised in an *in rem* proceeding, the preclusive effect of the judgment is measured by the "actual litigation" requirement. *Id.* § 30(3). The one fact Bazuaye cannot relitigate is whether he had a property interest superior to that of the United States in the $11,000 on the date of seizure.[18]

Virginia, by contrast, is among a minority of jurisdictions that recently have rejected the Restatement position, holding that a default judgment precludes relitigation of facts necessary to the judgment. *See TransDulles Ctr. Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274, 276 (1996). Thus, if Virginia law were to apply Bazuaye also would be precluded from relitigating title to the $11,000.

### d. Whether the Issue Was Actually Determined

Section 1609(b)'s incorporation of the common law "relation back" doctrine dictates that the issue of title to the $11,000 was actually determined. Once the final declaration of forfeiture was made, title to the $11,000 vested in the United States free and clear of any liens or encumbrances . . . from the date of the act for which the forfeiture was incurred. *See* 19 U.S.C. § 1609(b); *cf. Small*, 136 F.3d at

17. *E.g., United States v. Bailey*, 957 F.2d 439, 443 (7th Cir.1992); *In re Daley*, 776 F.2d 834, 838 & n. 7 (9th Cir.1985) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982)); *United States v. Ringley*, 750 F.Supp. 750, 759 (W.D.Va.1990) (same), *aff'd*, 985 F.2d 185 (4th Cir.1993); *Solomon v. Villa Fashions*, 1992 WL 174752 *2 n. 2 (E.D.Pa.1992); RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.").

18. Even if under general federal preclusion principles Bazuaye could still assert as a fact that he had a property interest in the $11,000

on the date of seizure in his FTCA suit, the Court would find it appropriate to apply the exception and give the default judgment preclusive effect on these facts. The incentives and opportunities to litigate the facts common to the forfeiture proceeding and the FTCA conversion claim are nearly the same. To allow a claimant such as Bazuaye, who had actual notice of the administrative proceedings, to collaterally attack the United States's title, which vested by virtue of the claimant's default, would frustrate the congressional purpose in establishing the administrative forfeiture scheme. *Cf. In re Daily*, 47 F.3d at 368–69.

1337 ("At some point, a forfeiture will reach a point of no return . . . .").

### e. Whether Preclusion Would Work an Unfairness

█ Bazuaye had every incentive to litigate the issue of title to the $11,000 during the forfeiture proceeding. The procedures available in a contested judicial forfeiture would have been very similar to those available in this action, and the remedies, although not identical, are sufficiently close to have motivated Bazuaye to timely contest the forfeiture. *Cf. United States v. 16 Sequoia*, 764 F.Supp. 1285, 1288 (N.D.Ill.1991). No unfairness results from holding that Bazuaye is estopped from re-litigating title to the $11,000.

### D. Whether the Postal Inspector Had Probable Cause To Seize

█ As a final ground for granting judgment to the United States, it would appear that the undisputed facts establish that Clark had probable cause to seize the funds if the Court were free to rely on the investigatory narrative supplied by the Government. As discussed *supra*, if Clark had probable cause to seize, Bazuaye cannot proceed on a theory of tortious seizure. The Court is puzzled by the absence of a declaration from Clark. The "Detailed Narrative" set forth in Exhibit F of the Government's August 21, 1997 Further Motion for Summary Judgment sets forth sufficient, unrebutted facts to establish that postal money orders purporting to have been purchased by Dr. Paul Eke were not, that the source of the Western Union money transfers was suspicious, and that the source of the $2,000 in cash that Bazuaye gave to his wife, also was in considerable doubt. These facts, some of which Bazuaye explicitly concedes, supplied Clark with probable cause. *Cf. United States v. Brock*, 747 F.2d 761, 762–63 (D.C.Cir.1984) (jewelry must have been acquired with drug proceeds); *United States v. $250,000*, 808 F.2d 895, 898–900 (1st Cir.1987) (government established proba-ble cause that bail money derived from illicit source).

But the Government's "Detailed Narrative" is not in a form recognized by Rule 56(e) of the Federal Rules of Civil Procedure. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court also has Inspector Clark's near-contemporaneous testimony in the *Nebbia* hearing, which would satisfy Rule 56(e), but that unrebutted testimony by itself does not establish probable cause. So it is clear, having reconsidered the prior rulings in this case, the Court would also grant judgment to the United States on the ground that Inspector Clark had probable cause to seize the $11,000—assuming that his receipt of the funds from the bondsman was a seizure—were it not for the problem of form.

### *CONCLUSION*

Accordingly, it is hereby

**ORDERED** that the United States's Second Renewed Motion for Judgment, made in response to the Court's Order of May 12, 1998 be GRANTED and Bazuaye's Second Renewed Motion for Partial Summary Judgment be DENIED. Judgment shall enter in favor of the United States.

IT IS SO ORDERED.